(121 App. Div. 105)

## HINMAN v. CLARKE et al.

(Supreme Court, Appellate Division, Fourth Department. July 9, 1907.)

1. MUNICIPAL CORPORATIONS—STREETS—USE—REMOVAL OF BUILDINGS.

In the absence of a general legislative restriction by ordinance or otherwise, an owner of a building in a city has a common-law right to the reasonable use of the city streets for the purpose of moving such building from one location to another.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, § 1509; vol. 25, Highways, § 457.]

2. SAME—CITY CHARTER—RESTRICTIVE ORDINANCE.

Under Oswego City Charter (2 Laws 1895, pt. 1, pp. 632, 633, c. 394) § 39, subds. 13, 24, providing that the city council may by ordinance prevent incumbering the streets and alleys within the city, and may also determine what are nuisances, and abate the same from any street, alley, etc., the city, though authorized to prohibit the use of the streets for the removal of buildings, must do so by a reasonable ordinance duly adopted and promulgated.

3. SAME—ORDINANCES.

Oswego City Ordinance No. 180, declaring that no person shall remove any building along or across any street "without permission from the department of public works, and shall give such" bond to the city of Oswego as the department shall require, was effective only to limit the common-law right to use the streets for the removal of buildings to such cases as the department of works should approve in the reasonable exercise of its discretion.

4. SAME—PERMISSION—REVOCATION—ESTOPPEL.

Where, after the owner of certain buildings had obtained the consent of the Oswego department of works to the use of the streets for the removal of buildings as required by a city ordinance, he proceeded to prepare other lots for the reception of the buildings and incurred expense in the furtherance of the undertaking, the city was not authorized to revoke the license so granted because of a protest of the owners of the property in the vicinity of the destination of such buildings, for the reason that they believed the removal to such location would damage their property.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, § 1367.]

5. SAME—POLICE POWER.

The revocation of such license and an order requiring plaintiff to remove the buildings from the street, where they were in process of transportation, was not sustainable as an exercise of police power.

Appeal from Special Term, Oswego County.

Suit by Elmer L. Hinman against Frederick O. Clarke and others, constituting the department of works of the city of Oswego, to restrain defendants from destroying two houses belonging to plaintiff, and from hindering or preventing plaintiff from removing the same along the public streets of the city of Oswego from one location to another. From a judgment in favor of plaintiff (100 N. Y. Supp. 1068), defendants appeal. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Francis D. Culkin, for appellants.

D. P. Morehouse, for respondent.

ROBSON, J.   The controversy between plaintiff and defendants originated in an attempt by plaintiff to move certain houses from their present or previous location in the city of Oswego, over and along the city's intervening public streets, to a location which had been procured for that purpose in another part of the city.   The proceedings have resulted in a judgment in plaintiff's favor, enjoining defendants from interfering with plaintiff's purpose, and defendants take this appeal to correct the error, which they assume the court has committed in granting to plaintiff the relief which the judgment provides.

The charter of the city of Oswego (chapter 394, p. 621, pt. 1, 2 Laws 1895) endows its common council with powers and corresponding duties in regard to the control of the public streets of the city at least as ample as those which we find are usually assigned to bodies occupying in reference to the municipal corporation a like relative position as a part of the municipal machinery.   The possibility of an effectual assertion of this control is assured by giving this body the necessary legislative and judicial powers, to be exercised by ordinance or resolution as the city's charter provides.   As an integral part of its power of general control of the city's public streets the council can by ordinance prevent incumbering the streets, sidewalks, lanes, alleys, and wharves within the city, and may also "determine what are nuisances and abate, destroy and remove the same from or on any street, alley," etc.   Section 39, subds. 13, 24.

As the trial court has said, the public streets are intended primarily for public travel thereon, and the municipality, in which is vested the care and control of streets within its limits, is required to maintain them in suitable condition for that purpose; but they may be lawfully used, temporarily at least, for other purposes, provided such use does not unnecessarily interfere with reasonably free passage of the public thereover.   "They are intended for the general use and convenience of all, and may be used for all the purposes to which they have from time to time been appropriated."   It appears from the evidence in this case that the streets of Oswego have been for many years used temporarily, and at intervals more or less frequent, as the occasion demanded, for moving buildings thereon.   We may, from general experience and observation, take judicial notice that streets of cities and towns similarly situated have frequently and without successful protest been used for like purposes; and we also adopt the conclusion of the trial court that plaintiff had a common-law right, in the absence of general legislative restriction by ordinance or otherwise, to the reasonable use of the public streets and highways for the purpose of moving his buildings.   Graves v. Shattuck, 35 N. H. 257, 69 Am. Dec. 536; 12 Ont. App. 679–682.

The common council, having control of the streets of the city, has the right to reasonably regulate their use in moving buildings upon them; and we are not prepared to say that this power of control might not also include the right to prohibit their use for that purpose, provided, always, that the prohibition were under the circumstances reasonable.   But the council, in its exercise of this legislative function, must act by ordinance, duly adopted and promulgated as the charter

provides. The only ordinance passed by the council which relates to this subject is known as No. 180 and reads as follows:

"No person shall remove, or cause or permit to be removed, or shall aid or assist in removing, any building into, along or across any street, sidewalk or public grounds without permission from the department of works, and shall give such bond to the city of Oswego as the said department shall require. A violation of this ordinance is punishable by a fine of not less than five or more than twenty-five dollars."

If the object of this ordinance was to delegate to the department of works the legislative or judicial functions in the premises residing in the council, it was ineffectual for that purpose. Phelps v. Major, 112 N. Y. 216–220, 19 N. E. 408, 2 L. R. A. 626. We do not, however, recognize that purpose in the ordinance, and are inclined to hold that its effect was to limit the common-law right to use the streets for the purpose of moving buildings to such cases, and those only, as the department of works, which is by the charter the branch of the city government having control of the repair, etc., of the city streets, should in the reasonable exercise of its discretion approve. Ordinances prohibiting acts, otherwise lawful, without the consent of an officer or body other than the local legislative authority having power to control by ordinance the subject-matter thereof, have frequently been upheld. Vance v. Hadfield (Sup.) 4 N. Y. Supp. 112; City of Eureka v. Wilson, 48 Pac. 41, 15 Utah, 53, 62 Am. St. Rep. 904. Many other cases of like tenor are summarized in the court's opinion in Re Flaherty, 105 Cal. 558, 38 Pac. 981, 27 L. R. A. 529. Although this ordinance may be found to be valid, it does not, nor does it assume to, prohibit the use of the streets for moving buildings thereon. Instead of prohibiting the use of the streets for that purpose, it seems, by implication at least, to recognize that use as proper and lawful, provided, only, the provisions of the ordinance are complied with.

Plaintiff, before attempting to use the city streets for that purpose, applied to the department of works for its consent to such use. Permission was granted, conditioned upon filing a bond to be approved by the city attorney. This bond was then furnished, duly approved, and filed. Plaintiff's application and the permission given thereon included three other houses besides the two in question in this action. Before the permission was obtained plaintiff had made a contract with one Esselstine to move these houses, which contract was to become of binding force only when permission to move the buildings was granted by the department. This contract was an entire one, and provided for the removal of all of the houses, for which plaintiff was to pay a gross sum, not apportioned. After receiving the consent of the department plaintiff proceeded with preparations for such removal, purchased material and supplies therefor, and otherwise proceeded to get the houses in readiness for their removal, and the lots, which were their ultimate destination, in readiness for their reception. Before an attempt was actually made to remove the two buildings in question, objection was made to the department by certain persons who owned lots in the vicinity of those on which plaintiff designed to place these buildings. This objection was based, not upon any alleged illegal or improper use of the streets in moving the buildings, as plaintiff

proposed, but solely, as stated in their remonstrance, that it was "their firm belief that their property will be injured" if plaintiff should be permitted to move these buildings upon the lots in question. Thereupon the department of works passed a resolution purporting to rescind the permission it had given as to the two houses in question here, but. not in any way affecting the right so given to move the other houses. This action of the department was taken August 8, 1904, and plain-- tiff thereafter made no attempt to move these houses until shortly prior to November 21, 1904, when, having been advised that he was acting within his legal rights, he caused the wing of one of the houses to be moved into and for some distance along the street towards its destined location, and also caused the upright part of one of the houses to be moved toward the street, so that it partly projected into and over the street.

We are of the opinion that plaintiff in moving these houses was acting within his rights in the premises. He had duly obtained from the department of works permission to move these as well as his other houses along designated streets, one of which he was then using for that purpose. He had complied with all the requirements of the ordinance under which permission had been granted. He had also in reliance upon that permission incurred liability and obligations in relation to these houses by his contract with Esselstine, and had subjected himself to expense in purchasing supplies to be used in repairing and rebuilding them in their new location, and in preparing the lots for their reception. Though it is clear that this permission was a mere revocable license until plaintiff had acted in reliance thereon, when he had so acted, and injury would result to plaintiff if the consent were withdrawn, we have then before us all the elements necessary to constitute an estoppel in plaintiff's favor, and the license then became irrevocable, except for an unlawful exercise of the license, or the neglect, default, or other misconduct of plaintiff, thereafter occurring, which might furnish sufficient ground for its revocation. There is no claim that the attempted revocation was based upon any such fact; and nothing of that kind appears in the case to have occurred, nor do defendants make any such claim.

If it be urged that the attempted revocation by the department of works of the license or permission theretofore given by it was an exercise of the police power vested in the municipality, and to properly control the use of public streets is, of course, within the purview of that general term, a sufficient answer to that suggestion is that the attempted revocation of the permission was not made by reason of any proposed improper or unwarranted use of the streets, but solely because some owners of property in the vicinity of the lots, which were the proposed ultimate destination of these houses, conceived that their property would become less valuable if the houses should be moved and placed thereon. No suggestion is made that the revocation was for any other reason than that we have stated; and, that being the only reason for this action of the department, it is difficult to understand how even the department itself could have conceived that its. action was in the exercise of police power. City of Buffalo v. Chadeayne, 134 N. Y. 163–167, 31 N. E. 443. It could with equal force

be claimed that the department had the right, if plaintiff had proposed to erect on these lots similar buildings, which his prospective neighbors conceived to be objectionable, it was within the police power of the department to pass a resolution prohibiting plaintiff from using the city's streets for hauling materials thereon to be used in erecting the buildings objected to. The attempted revocation of the license by the department of works was, therefore, ineffectual for any purpose.

When plaintiff had proceeded with his purpose in moving these houses to the extent we have already stated, the superintendent of works, acting under defendants' direction, successfully obstructed the further movement along the street of the wing of the house. The common council then passed a resolution, which, after first reciting that the portion of the building in the street was an obstruction, incumbrance, and a nuisance, then directed that plaintiff be "notified to tear down and take apart the building where it stands and remove the same forthwith," and forbade the further movement of the building along or upon any public highway. The resolution also contained a like direction as to the upright part of the building, which had been moved so as to partially project into the street. In case of the owner's neglect or refusal to remove the buildings, as directed by the resolution, "the same was to be done by the city authorities at the owner's expense." The resolution also directed the cancellation and return of the bond which plaintiff had given at the time permission to move the buildings had been by him obtained from the department of works, to which we have referred. This bond had been retained by the city up to that time. The judgment before us for review in effect restrained defendants from enforcing the provisions of this resolution.

It is at least a matter of serious doubt whether the common council had the power, under section 40, p. 636, of the charter to which our attention is directed as the warrant for its action, to declare by resolution that a building, which was being moved along a street, was a nuisance, and direct its abatement, in the absence of an ordinance on the subject, which was being violated by such use of the street. The council apparently appreciated this limitation of its power to act by resolution in the premises, for the resolution adopted contains the following suggestive recital: "And, whereas, an ordinance exists against the procedure of the owner or owners thereof"—the objectionable procedure being that plaintiff was attempting to move the buildings along the street. As we have already said, Ordinance No. 180, above quoted, was the only ordinance then existing which in any way related to, or, as the council in its resolution expressed it, existed "against, the procedure of the owner or owners." As already pointed out, plaintiff had complied strictly with the provisions of this ordinance; and the subsequent attempt of the department of works to revoke the permission it had given him did not accomplish its intended purpose. Plaintiff was acting within his strict legal rights, and was violating no ordinance or other valid regulation of the city. It follows that the resolution adopted by the common council was ineffectual and invalid for any purpose affecting plaintiff's rights under the permission given by the department of works.

Defendants' objection that this action cannot be maintained by plaintiff because, as it is claimed, he is the agent for and not the owner of the buildings in question, is disposed of by the finding of fact made by the trial court, which the evidence satisfactorily sustains, that plaintiff was the owner.

We have also examined defendants' exceptions to the admission and rejection of evidence on the trial, and conclude that the court committed no error in the rulings which defendants question.

The judgment should be affirmed, with costs.

Judgment affirmed, with costs. All concur.