(62 Misc. Rep. 342.)

McKENZIE et al. **v.** McCLELLAN, Mayor, et al.

(Supreme Court, Special Term, New York County. February, 1909.)

THEATERS AND SHOWS (§ 3*)—REVOCATION OF LICENSE.

> Greater New York Charter (Laws 1897, p. 22, c. 378) § 51, gives the board of aldermen power to provide for the licensing of common shows. An ordinance was passed by the board providing that the mayor should have power to suspend or revoke any license issued. *Held,* that he had power to revoke licenses to operate moving picture shows without notice to the licensees, and his action would not be enjoined.
> [Ed. Note.—For other cases, see Theaters and Shows, Cent. Dig. § 3; Dec. Dig. § 3.*]

Three separate actions by William McKenzie and Milmie W. Lane against George B. McClellan, Mayor, and Francis V. S. Oliver, Chief of the Bureau of Licenses. Motions for temporary injunction denied.

Gustavus A. Rogers, for plaintiffs.

Francis K. Pendleton, Corp. Counsel, for defendant McClellan.

PLATZEK, J. These are three several cases, in each of which the relief demanded is a temporary injunction to enjoin the mayor of the city of New York and the chief of the bureau of licenses from interfering with the moving picture businesses conducted by plaintiffs. On or about January 25, 1909, Mayor McClellan issued three separate individual orders revoking the licenses theretofore granted to the three respective plaintiffs to operate moving picture shows. The revocations were predicated upon complaints of the fire department, supported by information procured by investigations of the chief of the bureau of licenses.

The basic question of law involved is whether the mayor of the city of New York has the power to revoke the licenses of the three licensees without notice or hearing. The safety of life, limb, and property is

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

among the primary purposes of municipal government, and all reasonable regulations in aid of such objects within the police power of the state may be delegated to the municipality.

"The board of aldermen shall have power to make, amend and repeal ordinances, rules, regulations and by-laws not inconsistent with this act or with the Constitution and laws of the United States or of this state for the following purposes: * * * (6) In relation to places of public amusement." Greater New York Charter (Laws 1897, p. 18, c. 378) § 49.

"Subject to the Constitution and laws of the state, the board of aldermen shall have power to provide for the licensing and otherwise regulating the business of * * * common shows." Greater New York Charter, § 51.

It may be noted that the board of aldermen is not as a body given power to issue common show licenses. It is only authorized to provide for the licensing and regulation of "common shows." The ordinances under which these licenses were issued in part provide:

"The following businesses must be duly licensed as herein provided, namely, * * * common shows. * * * All licenses shall be granted by authority of the mayor and issued by the bureau of licenses for a term of one year from the date thereof, unless sooner suspended or revoked by the mayor. * * * The mayor shall have power to suspend or revoke any license or permit issued under the provisions of this ordinance."

The authority to grant licenses conferred on the mayor by the board of aldermen was a proper delegation of power. People ex rel. Larrabee v. Mulholland, 19 Hun, 548, affirmed 82 N. Y. 324, 37 Am. Rep. 568. The right to grant or refuse a license implies the power to do so unconditionally. The municipal ordinances expressly give the mayor the power to revoke licenses. The proof submitted shows that there is no city ordinance providing for notice to licensees or for a hearing before the revocation of a license by the mayor or the bureau of licenses. There is no doubt whatever but that the mayor has authority to revoke or suspend "common show" licenses. A license is only a permit to do a particular thing, and it is not property in any legal sense. It is a mere privilege granted by the municipal officer empowered to issue it, and is always revocable; the correlative power to revoke a license being a necessary consequence of the power to grant it. The revocation of a license is an administrative act, and may be effected without notice or an opportunity to be heard. People ex rel. Lodes v. Dept. of Health, 189 N. Y. 187, 82 N. E. 187, 13 L. R. A. (N. S.) 894.

The power vested in the mayor of the city of New York to grant licenses for "common shows" is discretionary, and not mandatory. The power of the mayor to issue the licenses cannot be questioned. His right to revoke the licenses issued by his authority is undoubted. The prerequisite of notice to revoke the licenses and of a hearing is unnecessary under the decisions of the court. The facts shown on this application in the three several cases and affecting each of the three separate places where the three several plaintiffs operated moving picture shows satisfactorily establish that the mayor of the city of New York did not act unreasonably or arbitrarily. He acted within the law and in the interest of the public safety and welfare in revoking the licenses, for proper cause, and on adequate information and proof. People ex rel. Schwab v. Grant, 126 N. Y. 473, 27 N. E. 964; People v.

Wurster, 14 App. Div. 556, 43 N. Y. Supp. 1088; People ex rel. Dorr v. Thacher, 42 Hun, 349; People ex rel. Worth v. Grant, 58 Hun, 455, 12 N. Y. Supp. 879.

The cases of City of Buffalo v. Chadeayne, 134 N. Y. 163, 31 N. E. 443, and Hinman v. Clarke, 121 App. Div. 105, 105 N. Y. Supp. 725, affirmed 193 N. Y. 640, 86 N. E. 1125, cited and relied upon by the plaintiffs, are inapplicable. The licensees urge that if licenses are denied them they will be unlawfully deprived of property and the good will of business established under licenses. The answer is that a license is not a contract or property, but merely a temporary permit, issued in the exercise of the police powers, to do that which otherwise would be prohibited. A somewhat similar question was raised in People ex rel. Lodes v. Department of Health, 189 N. Y. 187, 82 N. E. 187, 13 L. R. A. (N. S.) 894. Judge Haight, writing for the court, said:

"But the good will of the business so established must not be confounded with the permit granted to him to engage in that business. He was never licensed to sell impure and adulterated milk, and after he had obtained his permits to sell, and undertook the securing of customers, he knew that he was engaging in a business which must be conducted under the supervision of the board of health of the city, subject to the police powers of the state, and that such permits were subject to revocation. He knew that such permits contained no contract between the state or the board of health and himself giving him any vested right to continue the business, and that it would become the duty of the board to revoke his license in case he violated the statute or the conditions under which it was granted. * * * The power of the state to provide for the general welfare of its people authorizes it to prescribe all such regulations as in its judgment will secure or tend to secure them against the consequences of ignorance and incapacity as well as of deception and fraud."

The motion for a temporary injunction in each of the three cases is denied.

Motions denied.