himself of the protection of the factor's act, and the inference is that, if the loan had been made under like circumstances by a bank or banker, the factor's act might be found to apply. I am unable to see the force of this distinction. The business of pawnbroking is not anathema in the eye of the law; but, on the contrary, while strictly regulated, it is in other ways highly favored. In many countries it is deemed so important and honorable that it is engaged in by the government as an administrative monopoly. It is undoubtedly true that of recent years there has been a line of division between banking and pawnbroking; but it has not always been so, and history is full of instances in which great bankers have loaned large sums of money upon the pledge of rare and valuable jewels. I can see no reason therefore why defendant, who is conceded to have acted in good faith, should be denied the equal protection of the factor's act, merely because he pursues the perfectly lawful business of a pawnbroker. To test the applicability of the factor's act by the nature of the business carried on by the lender is to introduce an innovation which is not to be found in the language of the act itself, and which finds support in no reported case to which our attention has been called.

The kind of business commonly carried on by the lender might under some circumstances have a bearing upon the good faith of the transaction, but can have no such application in the present case because the good faith of defendant was conceded. The authority given to Weber was not a restricted one in the sense in which that term is used in the cases cited by the respondent. In those the restriction was as to persons to whom the sale was to be made, and thus conferred only a very limited agency. Here the agency, so far as concerns a sale, was unrestricted; the only limitation being as to the price—a very common limitation in cases of sale by agents or factors.

In my opinion the judgment should be reversed, and a new trial granted.

---

(68 Misc. Rep. 456.)

## WESTERN NEW YORK & P. TRACTION CO. v. STILLMAN.

(Supreme Court, Special Term, Cattaraugus County. July, 1910.)

1. MUNICIPAL CORPORATIONS (§ 703*)—STREETS—REASONABLE USE—REMOVAL OF BUILDING.

　　The owner of a building in a city has a common-law right to move the building along or across a street, in the absence of general legislative restriction by ordinance, etc., and subject to ordinances reasonably regulating such right.

　　[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 703.*]

2. STREET RAILROADS (§ 85*)—IRREPARABLE INJURY—INTERFERENCE WITH TROLLEY WIRES IN STREETS—REMOVAL OF BUILDINGS.

　　Where plaintiff, a street railway company, holding a franchise for the maintenance of its trolley system along the streets of a city, had in its employ competent electrical linemen and inspectors able to raise or lower its wires along the street, so as to permit the removal of a building along the street, and defendant, desiring to move the building, offered to reimburse plaintiff for all the expense incidental to the moving of the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

wires and for all damages caused thereby, plaintiff was not entitled to restrain such interference with its wires, on the theory that it would cause irreparable damage, for which it had no adequate remedy.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 193. 195; Dec. Dig. § 85.*]

Suit by the Western New York & Pennsylvania Traction Company against Frank V. R. Stillman ·to restrain defendant from interfering with plaintiff's wires in the moving of a building.   On motion to vacate temporary injunction.   Granted.

C. G. Bullis and George A. Larkin, for plaintiff.

Dana L. Jewell and Creighton S. Andrews, for defendant.

BROWN, J.   It is the contention of the plaintiff that, under its franchise to maintain and operate a street railway in the city of Olean by the trolley system, it has a vested property right to occupy the streets to maintain its trolley and supporting wires 17 feet above the pavement, which is indestructible, paramount, and superior to the rights of all others; that it cannot be compelled to raise or lower such wires to permit the moving of a building; that the moving of a building 30 feet high, which would collide with such wires, is a trespass; that the raising or the lowering of such wires, or the cutting of the same, so as to permit a building to cross its tracks, would produce such an injury to its trolley wires that it could not be replaced in as good condition as before; that the common council of the city of Olean had no authority to grant a permit to the defendant to move his building along or across the streets, which would necessitate any interference with plaintiff's wires.   To prevent such trespass and injury the defendant is restrained by the temporary injunction herein.

It is the contention of the defendant that the franchise of the plaintiff secures to it the right to occupy the streets of the city of Olean for the purpose of its business, subject to the right of the public to use the street in a reasonable manner; that such reasonable use includes the right to move buildings across such tracks and along the streets; that for many ·years the plaintiff has raised or lowered its wires for such purposes, upon being reimbursed the expense incurred; and that such expense is trifling, and no damage has resulted.

In moving defendant's building from its present location to its contemplated site, it will necessarily pass under five span wires on the west side of Union street, which support plaintiff's feed or trolley wire, and at the junction of Union and Henley streets the building will pass under the trolley wire extending into Henley street for one block.   It has been established by the many affidavits presented that the handling of these wires by competent electrical linemen, so as to permit the moving of the building along Union street, and into and through Henley street to defendant's premises, will not produce injury to the plaintiff of such a character as to be impossible of repair, nor which cannot be ascertained by careful and competent inspection. The plaintiff has in its employ many such linemen and inspectors, and by taking advantage of the provisions of the ordinance of the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

city of Olean adopted June 30, 1910, may protect itself from careless or negligent handling of its wires by taking charge of and doing the work; and, as the defendant offers to reimburse the plaintiff for all expense of such handling of such wires and all damage caused the plaintiff, the conclusion is necessarily reached that the plaintiff is not entitled to maintain its temporary injunction upon the ground that defendant's contemplated act of moving his building will cause irreparable injury and damage to plaintiff, for which it has no adequate remedy at law.

The claim that the moving of defendant's building and the consequent interference with plaintiff's wires will be a trespass upon plaintiff's property rights cannot be maintained. The proof is that for many years it has been the usual and customary practice to use the streets of the city of Olean for the purpose of moving buildings. Many buildings have been moved across plaintiff's tracks, plaintiff raising or lowering its trolley and span wires as necessities required, and the injury, damage, expense, or inconvenience occasioned thereby has been trifling. The municipality has granted defendant a license permitting him to use the streets for the purpose of moving his building. Plaintiff's property rights in the street are subject to the rights of the public to use the street for all reasonable purposes, and there would seem to be no good reason why the common-law right to move such a building along or across a highway should not be preserved as a reasonable use of such highway. In Hinman v. Clarke, 121 App. Div. 105, 105 N. Y. Supp. 725, affirmed 193 N. Y. 640, 86 N. E. 1125, it is said that an individual has "a common-law right, in the absence of general legislative restriction by ordinance or otherwise, to the reasonable use of the public streets and highways for the purpose of moving his buildings." The common council, in the exercise of its right to reasonably regulate the use of the city streets in moving buildings, having granted defendant the privilege of moving his building—the character of the building being such that the moving of it through the streets would be a reasonable use of the streets —the plaintiff's rights in the street must be held to be subservient and subject to defendant's right to move the building.

The temporary injunction will be vacated, upon condition that the defendant pay all expense and damage incurred by plaintiff in raising or lowering its wires and comply with the provisions of the city ordinance adopted June 30, 1910, with $10 motion costs to defendant.