HICKOK v. CITY OF MT. VERNON.

(Supreme Court, Appellate Division, Second Department. June 23, 1911.)

1. MUNICIPAL CORPORATIONS (§ 690*)—STREETS—HOUSE MOVING—PERMIT—REVOCATION—EVIDENCE.

In a suit against a city for revoking a permit to move a house along two streets after the house had been moved a short distance, it was error to exclude a showing by the city of prospective injury to shade trees along the second street; showing as to the first street having been properly permitted.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 690.*]

2. MUNICIPAL CORPORATIONS (§ 690*)—STREETS—HOUSE MOVING—PERMITS—REVOCATION—GROUNDS.

Under Mt. Vernon City Charter (Laws 1892, c. 182) § 166, empowering the city council to prevent injury to trees along the streets, and under an ordinance prohibiting cutting trees or branches thereof without the consent of the owner and the mayor, a permit to move a house along streets was properly revoked, where it appeared, after the house had been moved a short distance, that injury to trees had already resulted, and that further injury would result.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1490; Dec. Dig. § 690.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Trial Term, Westchester County.

Action by William P. Hickok against the city of Mt. Vernon. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed, and new trial granted.

Argued before JENKS, P. J., and THOMAS, CARR, WOODWARD, and RICH, JJ.

Frank A. Bennett, Corp. Counsel, for appellant.

Isaac N. Miller (Jacob Landy and Hugh M. Hewson, on the brief), for respondent

THOMAS, J. [1] The plaintiff received from the defendant a permit to move a house along North Sixth avenue to Valentine street, and along that street to a proposed location thereon. The house was moved into the street on May 6th, and was carried forward about 50 feet, when the defendant's commissioner of public works forbade continuance. On May 25th the defendant's common council directed the removal of the house from the street within five days, and thereupon plaintiff sold the house, and has recovered damages for defendant's refusal to permit the house to be moved some 1,600 feet farther to the place designated to receive it. The permit allowed use of the streets for the operation for eight working days. The permission was not recalled for delay, but on account of injury that had been and inevitably would be done to the shade trees in North Sixth avenue and Valentine street. The court permitted evidence of such injury in North Sixth avenue, but excluded similar evidence relating to Valentine street. This was error. The permit was entire, as was the undertaking, and illegal sacrifice of the trees at any part of the way was unwarranted.

[2] The plaintiff's testimony showed that further progress of the house would have resulted in injury to the trees on the street and avenue, which he describes as follows:

"Those trees branched out like all trees do when they get up a distance of about 15 feet from the ground; branched over like all trees do. I do not say I could have gone between those trees without cutting the branches. I say I would have had to cut the branches. I would not have had to cut the trees down. I would have had to cut off from those trees at least every branch that went from the direct line of the trunk out into the street, every one of them, from both those trees on both sides of the street. That is also true with respect to several other large trees up Valentine street. I would have had to cut the limbs off. In one case I would have had to cut down the body of the tree—had to cut down the whole tree."

This should be read in connection with his testimony indicating his appreciation of his rights and his intention to exercise them:

"I would have a right to trim them or bend them or handle them in such a way as the contractor with his skill and the architect with his knowledge would indicate would have to be done. I understood absolutely that that permit gave me a right, if necessary, to remove any branches or trees to the extent that it was necessary for me to have my house pass through the avenues of the city. No matter whether it did damage to the trees, or destroyed them, or injured the property owners' property, I had a right under that permit to move my house through the avenues of the city. It was act-

ing upon that theory and upon that belief that I insisted on moving my house through Sixth avenue and Valentine street after the permit was given."

While the house was moving 50 feet, several limbs were cut and bent. The evidence shows substantial injury to trees during the use of the permit. It proves prospective injury to and destruction of trees in North Sixth street, and evidence tending to prove a similar injury to trees in Valentine street was rejected. The learned trial justice submitted to the jury whether, to the time of the revocation of the license, the plaintiff had made improper use of the permit. The jury was allowed to consider only his conduct, past and present, in relation to trees that he met on the way or was encountering when he was stopped. The verdict would acquit the plaintiff of misconduct, notwithstanding the proof of the mutilation of trees. But if the verdict be regarded as justified, it also makes certain that the continuance of the undertaking would have entailed an impairment and destruction of trees not contemplated by the permit, and how great the stripping or demolition would have been on Valentine street does not appear, but should. Hence the defendant's officers were within their duty in interrupting the destruction menaced. The plaintiff asserts that what he had done measured his culpability, and not what his future progress demanded and what he intended. The completion of his enterprise entailed serious injury to the trees. His present claim of right to inflict it indicates his intention to do it. In reliance upon Hinman v. Clarke, 121 App. Div. 105, 105 N. Y. Supp. 725, plaintiff considers that power to revoke the permit should be tested by his conduct in the use of it, excluding a proposed use of it. But there was no suggestion in that case that a municipality must await the destruction of trees before revoking a permit to do an act that was conditioned that such destruction should be avoided. A "proposed improper or unwarranted use of the streets" is mentioned in the opinion. The plaintiff's conduct during the 50 feet of travel indicated his capacity for harm, and his frank avowal of prospective injury, which is in accord with the defendant's evidence, establishes what would befall the trees during the remaining 1,600 feet of the journey. A person wrongfully purposing the cutting of trees is enjoined before, and not after, its execution. A license revoked before, and not after, trees mutilated and felled, is in the public interest and in the course of legal duty.

But the plaintiff insists that his right of way was paramount and that he could clear from his path such obstacles as trees. He was required to give a bond conditioned that he would not injure the trees. This bond does not indicate that he could injure the trees upon the condition of paying for them. It assumed that such injury was beyond his right, and made provision for indemnifying, should he do what was forbidden. The ordinance of the city (chapter 12, § 3) provides:

"No person, persons, telephone, telegraph, messenger, or other company or corporation shall, without the written consent of the owner and the mayor cut or mar any of the trees, or branches thereof, in this city for any reason or purpose whatever."

Section 166 of the defendant's charter (chapter 182, Laws of 1892) provides that its common council, except as otherwise provided by law, shall have power—

"to direct the regulating and planting of shade and ornamental trees along the streets and sidewalks in said city, and to prevent the injury and deface-ment of such trees, and of fences, walls, posts and buildings in said city."

The ordinance relating to the trees had the force of law. It con-strained alike the plaintiff and the common council. The plaintiff knew that the moving of the house through the streets involved injury to the trees. The width of the house exceeded the space between certain of the trees, and its height plainly showed what harm it would inflict on the branches. If the city should have investigated and as-certained that the removal could not be done without breach of the ordinance, its failure to obtain the information and act upon it does not shift to it the entire fault, and leave the plaintiff free to recover damages for a culpability which he shared. While the plaintiff, under reasonable restriction to respect the safety of the street and its inci-dents, was entitled to move his house, his contention that interrupting shade trees along the way must fall before him, or their limbs be cut off for 30 feet in height to permit his passage, presents a claim to superior right of way to which assent is not given. As far as plain-tiff had gone, he had done unjustified harm, and in the longer space before him there were trees that he intended to sacrifice to his purpose. Hence the authorities properly stopped him.

The judgment should be reversed, and a new trial granted; costs to abide the event. All concur.

