In the Matter of the Application of ROCHESTER GAS AND ELECTRIC CORPORATION, Petitioner, for an Order against MILO R. MALTBIE and Others, Commissioners, Constituting as Such the Public Service Commission of the State of New York and State Division of the Department of Public Service of the State of New York, Respondents.

Supreme Court, Special Term, Albany County, October 30, 1939.

*Hubbell, Taylor, Goodwin, Nixon & Hargrave* [*Samuel E. Aronowitz* of counsel], for the Rochester Gas and Electric Corporation.

*Gay H. Brown, Counsel to the Public Service Commission* [*Sherman C. Ward and Porter L. Merriman* of counsel], for the respondents.

BERGAN, J.   The petitioner is a public utility corporation subject to the provisions of the Public Service Law.   In November, 1938, petitioner's stockholders voted to reduce its capital from $38,270,308 to $35,270,308 by eliminating $3,000,000 which had theretofore, by resolution of its directors, been transferred and added to its capital.

Direct authority is granted by statute to a stock corporation to effect such a change in its capital " so as to eliminate therefrom any or all of the amount thereof previously transferred thereto by resolution of the directors." (Stock Corp. Law, § 36, ¶ [G].)   But if the corporation is one subject to the provisions of the Public Service Law, it shall not file, and the Secretary of State shall not accept, a certificate thus reducing the capital, unless there is indorsed upon it the consent and approval of the Commission (in this case the respondents) having jurisdiction of the corporation. (Stock Corp. Law, § 38, subd. 1, added by Laws of 1935, chap. 760.)

Petitioner applied to respondents for approval of its certificate of reduction of capital. A hearing was held before an examiner who recommended disapproval. The respondents made an order denying petitioner's application and subsequently denied petitioner's application for a rehearing.

The petitioner sought to place the $3,000,000 so to be transferred from its capital in a " contingency reserve " and it stipulated in its application to the respondents for a rehearing that no portion of the money so transferred would be used for any purpose other than adjusting its depreciation reserve, unless upon consent of the respondents. It is apparently the view of the respondents that it would be preferable if the $3,000,000 so transferred from capital should be directly transferred to the reserve for depreciation, with certain reservations as to the effect of such transfer upon such reserve.

This proceeding in pursuance of article 78 of the Civil Practice Act, seeks an order annulling the determination and directing the respondents to indorse their consent and approval on the certificate.

Respondents contend the proceeding must be transferred to the Appellate Division for its determination in the first instance Petitioner urges its determination by the Special Term in the first instance. Whether a proceeding is to be transferred to the Appellate Division in the first instance or to be determined by the Special Term is not a matter for the discretion of the Special Term. The answer to the question is to be found only in the statute. Its language is plain and the procedural formula is explicit. Weight, competency and sufficiency of evidence are reviewable within the scope of article 78 only when the determination is the result of a " hearing held " and at which testimony was taken in pursuance of " statutory direction." (Civ. Prac. Act, § 1296, ¶ following subd. 5.)

Every such proceeding, regardless of whether or not additional questions falling within other subdivisions of section 1296 are raised, must be transferred in the first instance to the Appellate Division. Every other proceeding must be determined by the Special Term, which " shall itself dispose of the cause on the merits." There seems no latitude for debate in construction of the language employed. It is precise. The Legislature has prescribed a definite procedural method which entirely excludes discretion. Some confusion has arisen under this new practice in respect of what questions of weight and sufficiency of evidence are reviewable. If the hearing resulting in the determination to be reviewed was not held and the evidence adduced was not taken in pursuance of statutory direction, the weight, sufficiency and competency of

evidence are not reviewable in this proceeding. The Special Term cannot thus review these matters nor can it transfer them to the Appellate Division. They are not within the scope of review provided by the article, and, if relief is to be granted in such a proceeding, it must fall within one of the first five subdivisions of section 1296. Accordingly, the Special Term must either disregard those portions of a petition which complain that the evidence adduced at a hearing not held in pursuance of statutory direction is insufficient in weight or competency to support the determination reviewed or, if the hearing is in pursuance of statutory direction, it must transfer the proceeding to the Appellate Division.

A hearing held and evidence taken pursuant to statutory " direction " does not mean a procedure voluntarily adopted either for the information of the public authority whose determination is reviewed, or for the safeguarding or protection of the rights of parties to be affected by the result to be reached, nor does it mean a hearing in pursuance of some general power of inquiry vested in the public authority.

It means, plainly, that the public authority must hold a hearing and must take evidence to reach the determination under the mandatory and express compulsion of a law. No such compulsion propels the respondents in determining whether they should approve a certificate of reduction of capital in pursuance of section 38 of the Stock Corporation Law. Accordingly, the Special Term is required to determine whether the petitioner shows facts entitling it to relief under one or more of the first five subdivisions of section 1296 of the Civil Practice Act.

No triable issue of fact is raised by the answer or the accompanying papers within the scope of section 1295. The only unqualified denials in the answer are denials of petitioner's conclusions of law in paragraphs 11, 12 and 13 of the petition. By these the petitioner pleads no fact, and certainly the respondents' denials raise no issue of fact. No triable issue of fact is raised as to the allegation in paragraphs 9 or 10 of the petition. It is stipulated upon this application by petitioner that it will not use any portion of the reduction of capital for distribution among stockholders. The denials in the reply are denials, again, not of fact, but of conclusions of law affirmatively pleaded in the answer.

It is urged by the petitioner that respondents acted in excess of their jurisdiction in denying consent and approval to the certificate. It is said, and it appears from the memorandum of the examiner upon which respondents' action was based and which is referred to in both petition and answer, that the examiner considered upon his report to the respondents some matters of internal management of the petitioner's affairs which are not within the

jurisdiction of the respondents. But whatever may have been the process of reasoning underlying, or the motive for making the order, the respondents certainly had sufficient statutory jurisdiction of the subject to deny petitioner's application as well as to grant it. Accordingly, relief to petitioner cannot be predicated upon the assumption that respondents exceeded their jurisdiction or acted without or in excess of jurisdiction in denying petitioner's application.

The fifth subdivision of section 1296 is broad enough to authorize review of, and to afford relief against, determinations which are unreasonable or arbitrary. The power to make the capital change undertaken by petitioner's stockholders is granted directly to the corporation by statute. It is a matter of internal management of petitioner's business and control of its property. Respondents have no direct statutory authority over such a matter or jurisdiction to regulate it. The corporation itself " may effect " the capital change. (Stock Corp. Law, § 36.) The certificate effecting it and not the act itself needs approval by respondents. It is at most a merely formal matter.

I conceive it that if the purpose is lawful and in conformity with statute, the certificate formalizing the record of what the corporation does must be approved. There is little evidence of any intention by the Legislature to grant broad powers of discretion to the respondents by the device of so formal if not ministerial an act as the approval of a paper for the purpose of filing. The Legislature undoubtedly could have vested direct internal control over petitioner in respondents in respect of the transfer itself, but it plainly did not do so.

Nothing unlawful in the proposed capital change has been shown. No reason founded in statutory policy, or indeed, in any public policy, even that expressed by the respondents themselves, has been shown why the certificate should not have formal approval. The examiner upon whose report respondents' order of denial is based expresses the conjecture that certain other methods of handling the fund to be transferred might be preferred. He does not say expressly that the adoption of petitioner's method rather than one of these alternatives is a ground for rejecting petitioner's certificate. Nor do the respondents in their orders reach any such conclusion.

It would seem, finally, that the proposed reduction of capital is not itself objected to by the respondents, but rather, the respondents regard the place to which the resultant of the reduction is to go as not as desirable as another disposition of it within petitioner's internal financial structure.

Determination annulled, without costs. Submit order.