Aron Steuer, J.
Petitioners bring this proceeding pursuant to article 78 of the Civil Practice Act to review a determination of respondent license commissioner which revoked their license. The first question is whether this application should be heard in the first instance at Special Term or transmitted to the Appellate Division. The latter procedure is directed (Civ. Prac. Act, § 1296) where the review is of a determination made as a result of a hearing held pursuant to statutory direction and the question is whether the evidence taken at such hearing warrants the findings made and the action taken consequent to them *454 (Matter of Doherty v. McElligott, 258 App. Div. 257). All other applications, including those where the action followed a hearing not required by statutory mandate are to be heard in the first instance at Special Term (Matter of Rochester Gas & Elec. Corp. v. Maltbie, 172 Misc. 359). As petitioners admit that there is no statutory requirement directing a hearing the matter is entertained at Special Term.
The petition alleges that petitioners are partners engaged in the garbage removal business for which they held a license issued by respondent pursuant to the Administrative Code of the City of New York (ch. 32, art. 36). The only requirement for such a license is that the applicant be a person of good character (Administrative Code, § B 32-267.0, subd. d.). Petitioners are husband and wife but it is apparent from the petition that the active person is the husband. On November 18, 1957 he was advised by respondent’s office that a notice of a hearing for that day had been sent him. He denied receiving it and was told to appear the following day, which he did. No information as to the purpose of the hearing was given him. At the hearing he was questioned as to the activities of the Greater New York Cartmen’s Association, which is a trade association of people engaged in the same business as petitioner and of which petitioner was then the president. Nothing else was inquired into and no other witnesses were heard. On November 27, 1957 respondent notified petitioners that their license had been revoked.
It would appear to be axiomatic that where an officer is directed to issue a license to persons of good character he should refuse to issue one to any person, who in his judgment, properly exercised, fails to meet that standard. And it would naturally follow that if his original determination of good character was later found by him to have been erroneous through lack of information or otherwise he should revoke the license. That would be his plain duty and no serious opposition to these propositions has been heard.
The question is whether proper means to reach such a determination have been taken. Where the revocation of a license involves a property right and comes about as the result of a determination by an administrative officer or body, the act is of a judicial nature and to be valid must be in accord with due process of law (Matter of Wignall v. Fletcher, 303 N. Y. 435). Due process of law does not require adherence to all the formalities of a suit or trial but does require a notice of the charges and a hearing at which the person charged would have the *455 benefit of counsel if he desires and an opportunity to refute the claims made against him by cross-examination and the introduction of direct testimony (Matter of Hecht v. Monaghan, 307 N. Y. 461).
Respondent raises the issue of whether any property right is involved here. Where no such right is involved and the license constitutes a privilege only, due process does not require a hearing and the only limitation upon the administrative officer is that his acts should not be arbitrary (Matter of Fink v. Cole, 1 N Y 2d 48). Validity of the petition therefore depends on whether a right or a privilege is involved and, if the latter, whether the action of the commissioner was arbitrary. This is so because the procedure did not amount to due process to which the holder of a license to engage in a business is entitled.
The record is not detailed on the subject of petitioners’ specific business but there appears to be agreement that what they did was to collect and dispose of garbage and refuse in the city of New York. The argument of respondent is that this is a governmental function required to be performed by the municipality. The latter has its choice of performing this duty through the efforts of its own employees or by having others do it for the city, or, as was being done, by a combination of both methods. It is further argued that the right to perform a municipal function for the city is not a property right but a privilege, and the denial of that privilege is not a deprivation of property.
Intelligent discussion of this question can be aided by a preliminary elimination of certain misconceptions, which as they pervade respondent’s brief may be general. The legal concept of what is a right and what a privilege is not static. It was at one time deemed that the operation of a theatre (McKenzie v. McClellan, 62 Misc. 342), the business of delivering milk (People ex rel. Lodes v. Department of Health, 189 N. Y. 187) and the selling of liquors (Metropolitan Bd. of Excise v. Barrie, 34 N. Y. 657) were privileges. At the time it was recognized that regulation of these activities was needed to insure proper measures to protect health and safety and businesses which today are described as being charged with a public interest, were then described as privileges. In principle none of these means of earning a livelihood can be distinguished from driving a hack, now uncontestably a property right (Matter of Hecht v. Monaghan, 307 N. Y. 461, supra).
Secondly the situation here is not to be confused with the one where the city contracts with others to do its garbage *456 removal.. There undoubtedly the city can make such contracts as it sees fit and prevent all others from engaging in the practice (City of Rochester v. Gutberlett, 211 N. Y. 309). Petitioners here were not acting for the city directly or indirectly. They were engaged in an enterprise which paralleled in certain respects one which the city undertook as a municipal function. It is hard to see how this makes the petitioners’ occupation other than a property right. Surely the ownership and operation of some bus lines by the city does not take away from the operation of the others their character as a property right of their corporate owners. Attention has been called to the decision in P. & A. Carting Co. v. City of New York (7 Misc 2d 815). Nothing therein decided is in any way in conflict with what is here expressed. It follows that a property right was taken from petitioners and without due process of law.
As a consequence of the above it becomes unnecessary to decide whether the action of respondent was arbitrary. In view of the public interest rightfully taken in the disclosures that led up to respondent’s action it is not amiss to alleviate certain reactions. We are prone to pride ourselves on the rule of law and giving a fair hearing to the worst malefactors. When the hearing is protracted and the conclusion that which was practically foreordained we are especially self-congratulatory. But when a hearing has been denied, we often overlook its necessity in the vexation at the triumph of the unrighteous, forgetting that it is no answer to say that in his particular case due process of law would have led to the same result because he had no adequate defense on the merits (Coe v. Armour Fertilizer Works, 237 U. S. 413, 424). Nothing herein decided prevents or limits the commissioner from revoking the license upon notice and hearing, providing, of course, that proper grounds are found to exist.
The motion is granted.