CLARENCE LEVY, Plaintiff, *v.* LEWIS J. VALENTINE, as Police Commissioner of the City of New York, Defendant.

Supreme Court, Special Term, New York County, January 29, 1940.

*Harold Mortimer Brown,* for the plaintiff.

*William C. Chanler, Corporation Counsel* [*David J. Shivitz* and *Harry Hollander* of counsel], for the defendant.

ROSENMAN, J. This action was brought by the plaintiff, a licensed hotel runner, to restrain the defendant police commissioner from enforcing two written regulations which he has promulgated, and some oral instructions which he has given, to members of the police force on duty in the area about the exit of the Holland Tunnel, with respect to hotel runners.

The plaintiff has been a hotel runner, duly licensed by successive police commissioners, for approximately twenty years. He has been carrying on this business, in recent years, in that part of Manhattan bounded by Laight, Canal and Varick streets. His general course of conduct is to approach out-of-town automobiles when they have left the regular traffic line and inquire whether the occupants are looking for hotel accommodations. In the event they do, he endeavors to direct them to one of the hotels which he represents. There is no evidence in this case to show that the plaintiff has not at all times conducted his business properly and in accordance with section 925-a of the Penal Law which declares it a misdemeanor to divert a traveler from one hotel to another by the use of false statements.

In December, 1938, the police commissioner decided that he would not renew the yearly licenses of hotel runners, but would permit them to continue their trade during 1939 under the preceding year's licenses. Objecting to such action, the plaintiff and others, in May, 1939, commenced a proceeding under article 78 of the Civil Practice Act to compel defendant to issue such licenses as had been previously issued to hotel runners. That proceeding resulted in an order of the court directing this defendant to issue hotel runners' licenses (*Matter of Levy* v. *Valentine,* 172 Misc. 130). No appeal was taken from that decision in favor of the petitioners.

A few months later the police commissioner adopted the rules and regulations now sought to be declared invalid. These are in the following form:

"RULES AND REGULATIONS FOR LICENSED RUNNER.

"Pursuant to the authority vested in me by section 436–3.0 of the Administrative Code of the City of New York, I hereby revoke rules and regulations heretofore promulgated by me covering the conduct of Licensed Runners and enact rules and regulations to read as follows   *   *   *

"2. No insignia, sign, word or lettering other than the prescribed badge shall be worn or displayed except that while engaged as runner a brown cap (as per sample at Equipment Bureau of the Police Department) with the words ' Licensed Runner ' on front thereof, may be worn; no other part of a distinguishable uniform shall be worn.   *   *   *

"5. A runner shall not divert or attempt to divert, in any manner, any person from any indicated destination or place of stay which he mentions to a runner.   *   *   *

- "LEWIS J. VALENTINE,
"*Police Commissioner.*"

The oral instructions which were given to the police officers on duty in the vicinity of Holland Tunnel were to the effect that hotel runners were not to solicit automobiles until after they had left the police information booth, at which policemen distributed hotel information folders furnished by the Hotel Association of the City of New York, of which most of the hotels generally represented by runners were not members. Although it was disputed upon the trial, I find that such solicitation would not unreasonably interfere with any of the traffic affecting that vicinity, if carried on in the same way as at other parts of the area.

That hotel solicitation by runners has been a legitimate business for many years is not disputed. For over half a century such business was licensed by the city, and thereby stamped as legal. (Greater New York Charter, § 349.) The practice of licensing hotel runners was continued in the newly adopted Administrative Code (§ 436–3.0). The last-mentioned section provides that: "The commissioner may issue licenses authorizing the person or persons to whom the same are issued, upon any street, public highway, dock or pier, or in any park or square, in the city or upon any water adjacent thereto, over which such city has jurisdiction, to solicit patronage for any hotel, or inn, or passengers or patronage for any steamer, steamboat, ship, vessel or railroad, or for any person or corporation selling or offering for sale passage tickets, or contract-

ing or offering to contract for passage in any such steamer, steamboat, ship, vessel or railroad."

The Code also provides for fees, bonds, eligibility, etc., in connection with such licensing. The defendant claims to have promulgated the disputed rules under the authority of this provision of the Administrative Code.

The present New York City Charter, unlike the old, contains only the following provision under the heading " Powers over certain trades."

" § 436. The Commissioner shall in his discretion issue, revoke and suspend licenses for public dance halls, cabarets, hacks, taxicabs and taxi drivers, steamer and railroad runners and make such rules and regulations for the supervision and operation of such public dance halls, cabarets, hacks and taxicabs and taxi drivers, steamer and railroad runners as are not inconsistent with any other provision of law."

It should be noted that nowhere, either in section 436 of the charter or section 436–3.0 of the Administrative Code, is there any provision authorizing the police commissioner to make rules and regulations with reference to hotel runners. Although the charter permits him to make rules and regulations with respect to solicitation in other trades, including steamer and railroad runners, such authorization is entirely omitted with respect to hotel runners.

Unless such power and authority are specifically delegated by statute to subordinate administrative officers, such as the police commissioner, they have no power to make regulatory rules.

It is the statute of the Legislature which sets the public policy with respect to licensing and regulating trades affecting the public. Administrative officers may only apply the policy declared in the statutes regarding the same. They may not set different standards or change the policy. (*Matter of Executive Service Corp.* v. *Moss,* 256 App. Div. 345; *Matter of Picone* v. *Commissioner of Licenses,* 241 N. Y. 157; *Matter of Small* v. *Moss,* 279 id. 288; *Matter of Lyons* v. *Prince,* 281 id. 557; *Matter of Levy* v. *Valentine, supra.*)

A very clear statement of this principle is the case of *Cherubino* v. *Meenan* (253 N. Y. 462). There certain traffic regulations promulgated by the police commissioner were challenged as being without his authority. The court held that the rules were valid, because the power to make them had been delegated to the commissioner in the charter; but pointed out that in a previous case (*Peace* v. *McAdoo,* 110 App. Div. 13) the police commissioner's traffic regulations had been correctly held invalid because of the absence of such delegated power. The court, in fact, called attention to the fact that after the decision in *Peace* v. *McAdoo (supra)*

the Legislature had amended the charter to include the specific authority, among the police commissioner's powers, to make the regulations which were then under attack.

The cases cited by the corporation counsel are not at variance with this legal principle. In *Pacific States Box & Basket Co.* v. *White* (296 U. S. 176) the power had been lawfully delegated by statute (see pp. 178, 185, 186). In *Schmidinger* v. *Chicago* (226 U. S. 578) the regulatory ordinance itself was in question, the case not dealing with any delegated power to a commissioner at all. In *Matter of Stubbe* v. *Adamson* (220 N. Y. 459) the court held specifically (at p. 463) that the regulation could not be attacked, because it " had the force and effect of a statute because expressly authorized and approved by the Legislature," and for that reason the *ordinance* was held valid (p. 468).

In *Matter of Apel* v. *Moss* (256 App. Div. 607) the commissioner of licenses, it is true, had no specific delegation of power to promulgate regulations for shooting galleries, yet the appellate court said in the course of its opinion (at p. 608): " The commissioner had the right to make reasonable regulations, and there is nothing to show that this required side wall protection is in any way unreasonable." An examination of the record on appeal, however, discloses that the question of the commissioner's right to promulgate regulations was never raised either in the court below or on appeal. The parties and the court apparently presupposed that that power was present. Nowhere in the record is there any question to be found concerning the right and power of the commissioner to make the rules and regulations which the petitioner claimed he had obeyed, and which the defendant claimed he had not.

In view of the determination here that the defendant did not have the power or authority to make the regulations whose enforcement is sought to be restrained, the other points raised, particularly the question of reasonableness, need not be decided. If the commissioner believes that the business of hotel runners is no longer desirable in this city, he should request the proper legislative body to outlaw the business, and to abrogate the statute under which runners are licensed. He cannot take unto himself the authority to make rules and regulations concerning the business unless he receives such authority specifically by law.

Judgment for plaintiff. Findings of fact and conclusions of law passed upon. Settle decision and judgment.