Lester Holtzman, J.
This is a proceeding pursuant to article 78 of the CPLR “ (1) directing that the determination by respondents by which petitioner was issued a restricted automobile towing license be annulled; (2) that respondents be directed to issue to petitioner an unrestricted automobile towing license; (3) that respondents be restrained and enjoined from interfering in any manner with the conduct by petitioner of its business particularly in towing cars from public highways; (4) that respondents be held liable to petitioner for all damages which petitioner may have sustained by reason of respondents’ failure to issue to petitioner an unrestricted automobile towing license.”
Petitioner is in the business of towing disabled or damaged automobiles. Prior to January 1, 1966, there was one type of license issued annually to such businesses by the Police Commissioner and such a license was issued to the petitioner. By an amendment effective January 1, 1966 to section 436 of the Administrative Code of the City of New York, a new system of towing licenses was enacted which provides for issuance of restricted and unrestricted licenses. Petitioner applied for an “ unrestricted license ” but was issued a restricted license.
The distinction between a restricted license and the license issued to the petitioner prior to January 1, 1966 is an important one. Subdivision d of section 436-7.0 of the Administrative Code of the City of New York provides that: “ It shall be unlawful for any person other than a licensed tow car driver in a licensed towing car with an unrestricted towing car license to solicit the person in charge of a vehicle involved in an accident at the scene of such accident ”.
That section further provides that it shall be ‘ ‘ unlawful for any person other than a licensed tow car driver in a licensed tow car with an unrestricted towing car license, at the scene of an accident where towing is required, to make an estimate of the cost of repairs * * * or to offer to make repairs, although no charge is imposed or to be imposed for towing.” A restricted license is narrower in scope than the licenses issued prior to the amendment since a restricted license does not permit solicitation for business and an unrestricted license is broader than the prior license since it allows the use of special radios.
*659 Section 436-7.0 (subd. d, par. 1) also provides that an unrestricted license is to be issued to the owners of towing cars who, inter alia, “maintain and continue to operate facilities which are adequate for the repair of vehicles requiring body or collision work, in accordance with such reasonable standards as may be prescribed by the commissioner.” Pursuant to this subdivision, the Commissioner issued comprehensive regulations wherein it is provided in section C.2(c) that “ The licensee must also supply a Certificate of Motor Vehicle Repair Shop Permit from the Fire Department, as well as a Certificate of Occupancy from-the Building Department indicating that the premises may be used as an auto body shop.”
In a memorandum issued by the Police Department on January 12, 1966, after this action had already been commenced, it was stated that petitioner’s application for an unrestricted license was denied because:
“ (a) The Certificate of Occupancy submitted by Bay Towing calls for the premises to be used as a salesroom and carpenter shop.
“ (b) They did not have a Certificate of Motor Vehicle Repair Shop Permit from the Fire Department but instead submitted a copy of their application for said permit which was dated December 29, 1965.”
In its affidavits in support of this petition, the petitioner also states that the application was denied for these reasons but argues that the denial was improper since the Department of Buildings has not yet acted on petitioner’s application for a modification of the certificate of occupancy and because petitioner has also filed an application with the Fire Department for a certificate of motor vehicle repair shop permit which has not been acted upon by the Fire Department,
Petitioner argues that its application to this court should be granted because (1) it was not given a hearing on the application which is required by the due process clause of the United States Constitution; (2) the regulations promulgated by respondent are unlawful because they are not within the scope of the powers delegated to him by the Administrative Code and (3) since section 436 of the New York City Charter enumerates the Police Commissioner’s “ Powers over certain trades ” in the absence of a specific enumeration in the charter of the Police Commissioner’s power to regulate towing cars, the power to administer the regulations of the towing car business cannot be delegated to the respondent.
It is a fundamental principle of constitutional law that in certain instances where a petitioner has an important interest *660 in an administrative determination that will adversely affect him, the administrative agency must provide him with a hearing even where the statute which authorizes the administrative action does not require a hearing. In the past, the decisions involving whether a petitioner for a license is required to be given an opportunity to be heard have been couched in the language of whether the license is a privilege or a right. This doctrine, however, is in the process of being eroded by the courts which now view the question as one of whether the petitioner’s interests in the determination are so important as to require the procedural safeguards prescribed in the due process clause of the Federal Constitution. In Matter of Hecht v. Monaghan (307 N. Y. 461, 468) the court held that: ‘ ‘ Although the statutes empowering the hack bureau and the commissioner to grant, suspend or revoke a hack driver’s license do not expressly require that those licenses may be withdrawn only upon notice and an opportunity to be heard, it is not necessary that they do so. Where the exercise of a statutory power adversely affects property rights — as it does in the present case — the courts have implied the requirement of notice and hearing, where the statute was silent (see Wong Yang Sung v. McGrath, 339 U. S. 33; Clarksburg-Columbus Short Route Bridge Co. v. Woodring, 89 F. 2d 788, 790; Anti-Fascist Committee v. McGrath, 341 U. S. 123; Railroad Comm. v. Pacific Gas Co., 302 U. S. 388; Bauer v. Acheson, 106 F. Supp. 445; People ex rel. Copcutt v. Board of Health of City of Yonkers, 140 N. Y. 1, 6-7).” In Matter of Brown v. Murphy (34 Misc 2d 151) the court held that since the opportunity to work as a tow truck driver is a right and not a privilege, the application for such a license cannot be rejected without affording the applicant an opportunity to be heard.
The proper rule is that a hearing must be afforded on an application for a license where the nature of the administrative determination is adjudicative and concerns adjudicative facts aud where the applicant has a sufficient stake in the administrative determination. (See, 1 Davis, Administrative Law, ch. 7.)
The petitioner was not entitled to a hearing on his application for renewal of a car license for the following reasons. Petitioner contends that he has adequate facilities and that the requirement that he produce the necessary permits from the Fire Department and certificates from the Building Department is unfair. His objections to the determination of the administrative agency are in essence based upon the nature of the regulations promulgated by the Commissioner and not upon any quasi-judicial determination by the Commissioner. Since the determinations of the Commissioner do not involve any questions *661 of adjudicative fact, the respondent is not constitutionally required to afford the petitioner a hearing. This result is required since there is really no factual dispute involved and since this section provides a new procedure for determining the qualifications of licensees.
Nor does this court agree with petitioner’s second argument. The legislative findings contained in section 436-7.0 of the Administrative Code state the purposes of the amendment. That section states, inter alia: “ It is hereby declared and found that the rates and charges imposed for the towing of disabled motor vehicles in the streets of the city and for the repairs to such vehicles after having been towed from the place of disablement or accident is a matter affecting the public interest and consequently should be subject to supervision and administrative control, for the purpose of safeguarding the public against fraud, exorbitant rates and similar abuses. The operation of towing ears and the repair of motor vehicles in conjunction with such operation is a private business and persons engaged therein are entitled to a fair and reasonable return therefrom. However, it is against public interest for persons rendering this type of service to derive excessive profits from exorbitant rates and from improper practices.”
The section further states: “ Many complaints have been received both from residents of and visitors to the city regarding excessive charges by the operators of towing cars for repairs to motor vehicles which were disabled and required towing services. Investigation discloses that in many instances such excessive charges arise from the fact that some tow car licensees do not have their own repair facilities, and when they tow a vehicle which has been involved in an accident, they obtain substantial commissions for bringing such vehicle to a repair shop. This practice is reflected in higher costs to the traveling public, without any additional service being rendered. It is therefore necessary to protect the public against such improper practice.”
Subdivision d gives the Police Commissioner the power to prescribe standards which are adequate for the repair of vehicles requiring body or collision work.
In light of the basic purpose of this amendment which is to protect the public from fraud by assuring, inter alia, that holders of unrestricted licenses have adequate facilities, it is obvious that the regulations issued by the Commissioner under this section, which require that a licensee submit a permit from the Fire Department and a certificate of occupancy from the Building Deps' tment, are reasonable and consistent with the purposes of the section which delegates power to the Commissioner.
*662 Petitioner’s third attack on the legislation raises difficult problems. There is no question that the City Council has the authority to regulate tow cars. As the court stated in Pomeranz v. City of New York (1 Misc 2d 486, 489-490, affd. 7 A D 2d 752): “ The Constitution of the State of New York (art. IX, § 12), the City Home Rule Law (§ 11, subd. 2) and the New York City Charter (§ 27) have conferred upon the City Council broad legislative power to provide by local law for the preservation and promotion of health, safety and the general welfare of its inhabitants. ‘ If such laws have substantial relation to matters over which legislative power is vested in the local legislative body of the city and are not inconsistent with laws of the State, they are valid ’. (People v. Lewis, 295 N. Y. 42, 49.) ‘ They must be reasonably calculated to achieve a legitimate public purpose.’ (Good Humor Corp. v. City of New York, 290 N. Y. 312, 317.) ”
The petitioner argues, however, that since section 436 of the New York City Charter specifically enumerates the Commissioner’s power to issue and revoke licenses over certain trades and since such enumeration does not include power to regulate towing ears, the City Council acted in violation of the charter by delegating to the Commissioner power to enforce regulations over such vehicles. Section 436 provides, in part, that “ The commissioner shall in his discretion issue, revoke and suspend licenses for * * * hacks, taxicabs and taxi drivers ”, It is not here necessary to determine whether towing cars come within the above enumeration of vehicles, which may be licensed by the Commissioner pursuant to section 436. However, in Levy v. Valentine (173 Misc, 306) the court held that the Police Commissioner could not regulate hotel runners because neither section 436 of the charter nor the Administrative Code authorized such a regulation, but stated (p. 309): “Unless such power and authority are specifically delegated by statute to subordinate administrative officers, such as the police commissioner, they have no power to make regulatory rules.” This language, although dictum, indicates that section 436 does not limit the delegation of administrative powers to the Commissioner.
Also, since the City Council acting pursuant to section 42 of the New York City Charter could have amended the charter merely by passing a local law to provide that the Police Commissioner could enforce the provisions for regulation of tow cars, its oversight in failing to do so merely leaves a formal defect which this court holds does not necessitate the drastic step of abrogating the entire system for regulating tow cars which has been enforced by the Police Commissioner for many years.
*663 It can also be argued that the powers vested in the Commissioner, pursuant to section 436 of the charter, are legislative in nature giving him power, in his discretion, to issue regulations, whereas the delegation to the Commissioner, pursuant to the provisions of section 436 of the Administrative Code vest in the Commissioner only the power to prescribe regulations pursuant to definite standards proscribed by the City Council and, therefore, section 436 is not a limitation on the delegation of administrative powers to the Commissioner.
The Council acted within its authority in passing the regulation and the court can find no limitation on the Police Commissioner’s power to receive the power delegated by the City Council to enforce these regulations. Accordingly, the petition is denied.