OPINION OF THE COURT
Rudolph U. Johnson, J.
Plaintiff, Wnek Vending and Amusements, Inc., originally sought injunctive relief from this court, restraining the defendants, City of Buffalo et al., from enforcing the provisions of section 27 of chapter VII of the Buffalo City Ordinances which prevented the plaintiff from distributing and operating coin controlled "pinball machines” within the limits of the City of Buffalo.
By memorandum decision dated July 7, 1978, this court denied plaintiff’s request noting that a factual question existed over whether the addition of "flippers” to the device traditionally known as a "pinball machine” so materially changed the game’s operation as to substantially remove the element of chance and thereby place this new type of "pinball machine” into the category of the nonprohibited bowling machines.
Additionally, this court pointed out that plaintiff’s claim of irreparable injury was factually unsupported and, therefore, not entitled to the drastic relief of temporarily enjoining a city ordinance.
Plaintiff’s constitutional challenge to the validity of the ordinance was not, therefore, reached by this court.
Pursuant to notice of motion on September 6, 1978, plaintiff sought reargument of his request for injunctive relief. By affidavit of plaintiff, it was factually shown that irreparable damage was being suffered, which damage defendants did not deny or otherwise oppose. Plaintiff further withdrew its constitutional challenge of unequal protection of the laws which challenge originally raised the factual question covering the effect that the addition of "flippers” had on the degree of chance involved in the playing of a "pinball machine”.
Accordingly, plaintiff now bases its request for injunctive relief solely on a constitutional attack on section 27 of chapter *986 VII of the Ordinances of the City of Buffalo. In that regard, the city invites this court to determine the constitutionality of the ordinance but makes no specific defense to plaintiff’s argument other than to note the strong presumption of constitutionality granted legislative enactments. (Matter of Malpica-Orsini, 36 NY2d 568; Nettleton Co. v Diamond, 27 NY2d 182; Rochester Poster Adv. Co. v Town of Brighton, 49 AD2d 273.)
At the outset, it is of interest to note that plaintiff does not move by way of CPLR article 78 to compel the city to license the machines in question, but rather requests a declaration voiding the ordinance and seeks equitable relief to restrain the city from causing plaintiff irreparable damage and injury through the enforcement of its ordinance. "A court of equity will assume jurisdiction, and will enjoin enforcement of a void ordinance where its enforcement will affect property rights and work irreparable injury.” (Cowan v City of Buffalo, 247 App Div 591, 597.)
On May 5, 1978, the plaintiff filed applications on forms provided by the defendants requesting issuance of licenses for two coin operated "pinball machines” to be located at two sites within the City of Buffalo. By letter of that same date the defendant, Frank J. Hahn, as license director, disapproved the plaintiff’s application "on the grounds that they are in violation of the City Ordinance, Chapter 7, Art. 2, Sec. 27(1) (b). They are both Pinball Machines and illegal in the City of Buffalo.”
The city ordinance provides in pertinent part:
"No 'gambling device’ shall be licensed hereunder. The term 'gambling device’ shall mean and include:
"(a) A machine, slot machine, apparatus, paraphernalia or device whether manually, mechanically, electrically or otherwise operated, in or upon which a game or contest involving an element of chance may be played and the machine or device may be operated by one or more persons, singly or collectively, upon, and as the result of, the insertion of a piece of money or coin, or other object for which a fee, charge or other consideration is imposed directly or indirectly;
"(b) A machine, apparatus, paraphernalia or device of the type, design, class or construction commonly known as a pinball or bagatelle machine, upon which a game or contest is played upon the insertion of a piece of money or coin, or other object for which a fee, charge or other consideration is imposed directly or indirectly; and
*987 "(c) A machine, apparatus, paraphernalia or device that is adapted, or may be converted into one that is adapted, for use in such a way that, as the result of the insertion of a piece of money or coin, or other object, such machine or device is caused to operate, and, by reason of an element of chance or other outcome of such operation, unpredictable by him, the user may receive, or become entitled to receive, a piece of money, credit, allowance or thing of value, or any check, slug, token or memorandum, whether of value or otherwise, which may be exchanged for any money, credit, allowance or thing of value, or which may be given in trade, or the user may secure additional chances or rights to use such machine, apparatus or device, irrespective of whether it may, apart from the element of chance or unpredictable outcome of such operation, also sell, deliver or present some merchandise, indication of weight or other thing of value.”
It is the contention of plaintiff that the language of the ordinance is so vague and loose that it leaves to those required to apply it so wide a discretion as to allow for arbitrary and capricious decisions. Plaintiff maintains that no standards are set forth to aid the licensing authority to validly determine whether a given apparatus is a "gambling device” as defined by the ordinance.
Plaintiff emphasizes that the choice of the phrase "element of chance” to define a "gambling device” without further prescribed standards to aid the licensing authority is constitutionally vague requiring an arbitrary decision in granting or refusing a license application.
However, the due process criteria of legislative standards in licensing ordinances is not as plaintiff argues; that all be informed by a statute as to what it commands or forbids and that men of common intelligence, experience and understanding must not be forced to guess at its meaning, but rather is only to afford a reasonable guide to the licensing authority. While the power to exercise discretion as delegated by the Buffalo Common Council must be accompanied by certain standards, the enactment is not required to specify details. It need only provide a general guide for the licensing agent.
We cannot, therefore, agree that the ordinance as a whole should fall as being constitutionally vague, arbitrary or unreasonable. As stated in Matter of Levine v Whalen (39 NY2d 510, 515-516): "The Legislature may constitutionally confer discretion upon an administrative agency only if it *988 limits the field in which that discretion is to operate and provides standards to govern its exercise. This does not mean, however, that a precise or specific formula must be furnished in a field where flexibility and the adaptation of the legislative policy to infinitely varying conditions constitute the essence of the program. The standards or guides need only be prescribed in so detailed a fashion as is reasonable practicable in the light of the complexities of the particular area to be regulated, since necessity fixes a point beyond which it is unreasonable and impracticable to compel the Legislature to prescribe detailed rules (Matter of City of Utica v Water Pollution Control Bd., 5 NY2d 164, 168, 169). Indeed, in many cases, the Legislature has no alternative but to enact statutes in broad outline, leaving to administrative officials enforcing them the duty of arranging the details (Matter of People [International Workers Order], 199 Misc 941, 972, affd 280 App Div 517, affd 305 NY 258). More to the point, it is not always necessary that license legislation prescribe a specific rule of action and, where it is difficult or impractical for the Legislature to lay down a definite and comprehensive rule, a reasonable amount of discretion may be delegated to the administrative officials (Matter of Bologno v O’Connell, 7 NY 2d 155, 159).” (See, also, Matter of Employers Claim Control Serv. Corp. v Workmen’s Compensation Bd. of State of N. Y., 35 NY2d 492; Matter of Barton Trucking Corp. v O’Connell, 7 NY2d 299; Matter of Elite Dairy Prods. v Ten Eyck, 271 NY 488; Matter of Shell Oil Co. v Farrington, 19 AD2d 555.)
More critically, we note that the plaintiff in pressing its argument overlooks the fact that its license application was denied under section 27 (1) (b) which specifically forbids "pinball machines”. The ordinance does not attempt to define a "pinball machine” but does emphatically outlaw the general category of devices commonly known as a "pinball or bagatelle machine, upon which a game or contest is played”.
As previously pointed out the factual question, whether the addition of "flippers” is such a technical advance as to remove plaintiff’s machines from that general category is no longer before this court. Therefore, from the moving papers, briefs and arguments submitted, this court finds that it cannot be said that the licensing director lacked reasonable grounds to deny plaintiff’s application to license a "pinball machine”. In Matter of Albert Simon, Inc. v Myerson (36 NY2d 300, 302-303) the Court of Appeals upheld the validity of a near *989 identical New York City Ordinance which was under similar constitutional challenge and ruled:
"in relevant parts, they provide: 'Gaming devices prohibited. It shall be unlawful * * * to possess or maintain a gaming device or permit the maintenance or operation of any such gaming device in any premises or place’ (Administrative Code of City of New York, § 436-8.0, subd c); and 'Definitions. Whenever used in this section, the term "gaming device” shall mean and include: 1. Any game involving any element of chance * * * 3. Any machine or aparatus of the type, design, class or construction commonly known as pinball or bagatelle’ (§ 436-8.0, subd b).
"A very extensive declaration of legislative purpose incorporated in the ordinance (§ 436-8.0, subd a) makes clear that it is the use to which such gaming devices are put rather than their inherent characteristics that motivated their interdiction.
* * *
"The ordinance does not violate due process.
* * *
"The hearing officer, for the reasons already stated, correctly viewed the issue before him for determination to be not whether the particular pinball machines were gambling devices in and of themselves but simply whether they were either pinball machines or games with an 'element of chance’ so as to come within the embrace of the ordinance’s language. The determination that they met those criteria was supported by substantial evidence.”
While the City of Buffalo’s ordinance does not contain a declaration of legislative purpose, this fact does not otherwise distinguish Matter of Albert Simon, Inc. (supra). A fair reading of the City of Buffalo’s ordinance indicates that it too is aimed at the "use to which gaming devices are put rather than their inherent characteristics”. In determining the validity and operation of a licensing ordinance, general rules of construction apply. Legislative intent may therefore, be construed from the language of the enactment itself. (53 CJS, Licenses, § 13, pp 492-493.)
In Matter of Albert Simon, Inc. (supra), the licensing officer issued his denial after providing the applicant some form of hearing at which a review of evidence was had. In the matter before us it is conceded that no hearing of any kind *990 was afforded plaintiff. Plaintiff, therefore, argues that the ordinance is fundamentally defective for failing to provide procedural due process safeguards of a hearing, notice, findings of fact and an opportunity for review.
While the city ordinance may be inartfully drawn it does appear to allow for a hearing at the issuance stage. Section 27 (8) of chapter VII under the heading of revocation op license provides: "A coin-controlled amusement device license or location-operator approval permit may be revoked by the director of licenses and permits for cause and after a hearing. He may hold a hearing to determine the propriety of issuing, reviewing, or revoking such a license or permit. ” (Emphasis added.)
However, even if the ordinance is construed as silent on providing an administrative hearing this issue is not controlling. As enunciated in Matter of Hecht v Monaghan (307 NY 461, 468): "Where the exercise of a statutory power adversely affects property rights — as it does in the present case — the courts have implied the requirement of notice and hearing, where the statute was silent (see Wong Yang Sung v. Mc-Grath, 339 U. S. 33; Clarksburg-Columbus Short Route Bridge Co. v. Woodring, 89 F. 2d 788, 790; Anti-Fascist Committee v. McGrath, 341 U. S. 123; Railroad Comm. v. Pacific Gas Co., 302 U. S. 388; Bauer v. Acheson, 106 F. Supp. 445; People ex rel. Copcutt v. Board of Health of City of Yonkers, 140 N. Y. 1, 6-7).”
The court does not believe, however, that a hearing need be implied or otherwise afforded plaintiff on the review of its application for the issuance of licenses for coin-controlled amusement devices.
Administrative determinations fall into two broad categories, those purely administrative and those judicial or quasi-judicial in nature.
Plaintiff’s license applications were denied as they requested the licensing of two "pinball machines” which machines were specifically declared illegal by section 27 (1) (b) of the Ordinances of the City of Buffalo. The licensing director’s action in denying these applications was, therefore, purely administerial and required no quasi-judicial determination to conclude that a denial was in order. No hearing is, therefore, to be implied as the determination was not judicial in nature.
The court recognizes that a fundamental principal of constitutional law dictates that when a license applicant’s property rights will be adversely affected by an administrative determi *991 nation which is judicial in nature, the administrative authority must provide the applicant a fair hearing even though the delegating statute does not mandate a hearing. A further distinction is made, however, between the granting of the license as a matter of privilege or as a matter of right.
While recent court decisions have noted an erosion of this distinction it nevertheless, remains valid when applied with consideration to the character of the occupation or business being licensed. (Matter of Brown v Murphy, 34 Misc 2d 151; Matter of Bay Towing v Broderick, 49 Misc 2d 657.)
Plaintiff contends that it is merely attempting to conduct a legitimate business of distributing coin-operated amusement devices and that it ought to have been afforded an opportunity to establish that its machines no longer involve an "element of chance” and were not, therefore, "gambling devices” within the definition of the ordinance. In effect plaintiff contends that it had a right to have its machines licensed. Such is not the case.
The court recognizes that the number of licensing ordinances has grown significantly and now include many ordinary occupations and businesses, of which it may fairly be said the applicant has an initial right to be granted a license —failing a showing by the licensing authority that the applicant has somehow forfeited that right. In that instance, the applicant can surely expect the protection of procedural due process, namely, a fair hearing to present his side on the issues of adjudicative facts and thereby rebut the allegations on which the denial was based.
In the matter before us, however, the plaintiffs occupation is not one of an ordinary nature to which many individuals aspire. It is this very character of plaintiffs business that the city’s ordinance purports to control.
It is firmly established that any municipality, as a valid exercise of its police powers, has the right to prohibit or regulate trafficking in gambling. The issuance of the licenses requested by plaintiff is therefore a privilege to which the plaintiff had no clear legal right.
Even if the court were to view the ordinance as a whole as urged by plaintiff, we are not pursuaded that it violates procedural due process. See Matter of Fink v Cole (1 NY2d 48, 51-53) where the Court of Appeals refused to honor a due process challenge that the State Racing Commission Act failed *992 to provide a hearing for a license request to engage in the business of horse racing. There the court stated:
"The Legislature does not provide for a hearing procedure with respect to thoroughbred racing in connection with the processing of licenses or renewal licenses (State Racing Commission Act [L. 1926, ch. 440], § 9-b, subd. 2, added by L. 1951, ch. 324). Under such circumstances, there is no statutory or implied requirement for a hearing. (Matter of Guardian Life Ins. Co. v Bohlinger, 308 N. Y. 174, motion for reargument denied 308 N. Y. 810).
* * *
"The cases cited by the petitioner are not in point as they refer to statutes requiring a hearing or factual situations giving rise to a due process question because of the invasion of constitutional right. The administrative machinery, here, was created for the purpose of determining whether a privilege — a license — should be granted to citizens to engage in the business of horse racing.”
Lastly, plaintiff stresses that because the type of machines at issue here is readily allowed and in use in all other areas of Erie County, save for the City of Buffalo, the city’s ordinance has become an anachronism without any valid legislative purpose. This may or may not be factually correct; however, it is not for this court to declare void an otherwise valid ordinance. The language of the Court of Appeals in Matter of Albert Simon, Inc. v Meyerson (36 NY2d 300, 303, supra) is on point: "The legislation adopted by the municipality is required to be reasonably related to a proper governmental purpose, here the prevention of evils associated with gambling. To reinforce the presumption that the regulation is valid (Nettleton Co. v Diamond, 27 NY2d 182, 193) we have an expressed legislative judgment that there is a strong relationship between gambling and the evils that attend it, on the one hand, and pinball machines on the other. We cannot say this judgment is irrational. It would not matter whether the courts thought the legislation unwise, or that its purpose could better be achieved in another way, or that the method chosen was ineffective. So long as it has a rational basis, the choice of the particular course to be taken was for the Legislature.”
If then, the City of Buffalo’s pinball ordinance has outlived the legitimate concern of the proliferation of gambling and gambling devices that it originally set out to guard against, it *993 is for the Buffalo Common Council to investigate and legislate accordingly.
Plaintiff’s request for preliminary injunction is denied. The Corporation Counsel for the City of Buffalo is directed to submit an order accordingly.