OPINION OF THE COURT
Arthur E. Blyn, J.
Petitioner brings on this CPLR article 78 proceeding against the respondents seeking a judgment directing the respondents to issue a license for high pressure boiler engineer or, in the alternative, remanding the issue for a due process hearing to be conducted by respondents.
Section B26-4.0 of article 4 of the Administrative Code of the City of New York requires a high pressure boiler engineer’s license before a person can operate any high pressure steam boiler and it further sets forth in section B26-4.3 the various alternative requirements by which an applicant can qualify.
*305 Petitioner claims he has met the qualifications under either paragraph (1) or (2) of subdivision a of section B26-4.3.
The paragraphs at issue read as follows:
“(1) Has been employed as a fireman, oiler, general assistant, journeyman boiler maker or a machinist to a licensed high-pressure boiler operating engineer in the city of New York for a period of five years of the seven years immediately preceding the date of his application; or
“(2) Has received the degree of mechanical engineer from a school or college recognized by the university of the state of New York and has had one year’s experience in the operation and maintenance of high-pressure boilers under the supervision of a licensed high-pressure boiler operating engineer”.
The verified petition and answer reveal the following facts. In May of 1978 petitioner submitted his application for a license. The Department of Personnel conducted an investigation with regard to petitioner’s work experience at Sea View Hospital. The department alleges that this investigation revealed that petitioner was employed at Sea View as an electrician with duties to maintain and repair electromechanical equipment in the power house and boiler room. Respondents state that some of this information was obtained from a response by Mr. Louis Fiore, Superintendent of Buildings and Grounds at Sea View, dated May 15, 1978, to a written form inquiry by the department (submitted as petitioner’s Exhibit No. 1).
That exhibit indicates that petitioner held the position of electrician with duties “to maintain and repair electromechanical equipment in Power House and Boiler Room such as blowers, coal stokers, and coal conveyors, control systems, refrigeration and air conditioning systems, pumps, motors, etc.”, and lists his job located at “Boiler Room, JK Bldg., Power House”. To the inquiry “Did he perform these duties in connection with the operation and maintenance of high-pressure boiler?” — Mr. Fiore responded — “Yes” and to the description of the pressure per square unit, responded “150” and horsepower “50” and devoted 100% of his time to such duties. As to the important question in the inquiry: *306 “Did candidate work under the direct supervision of a high-pressure boiler operating engineer licensed by the City of New York?” Mr. Fiore checked “Yes” and the xerox copy is only legible as to the first two words of an addition inserted — “when working”, the balance of the response being illegible. The response further states that Mr. Fiore recommends the petitioner for the license.
At the end of the form appears the following language: “It would be helpful to us if the licensed high-pressure boiler operating engineer under whom the candidate worked would review the information above and indicate, by his signature, that the duties performed by the candidate under his supervision meet the requirements of the Administrative Code for qualifying experience for the license of high-pressure boiler operating engineer”. Beneath the foregoing appears the signature of Stephen J. Howard, Index No. 1719, dated May 31, 1978.
In a subsequent letter dated July 18, 1978 to the department at petitioner’s request Mr. Fiore made the following statement: “As you know the fiscal crisis of New York allowed for the broad-banding of duties of specific titles. Our electrical generating plant at Sea View is of such magnitude (serving a complex of twenty buildings with power and heat) that a mechanic, preferably an electrician, from our staff was necessary full-time, for its proper operation. This electrician had to be capable of performing all aspects of engineering as pertain to the operation of a high-pressure boiler system. Mr. Sedutto, being an Electrical Engineer with prior experience in a high-pressure boiler system, was ideally qualified to perform all the necessary duties in such a setting and did so accordingly”.
Petitioner in Exhibit No. 3 furnishes proof that he passed the practical and written tests for the license, which the respondents admit in their answer.
The only definitive explanation of the basis for the department’s denial of the license appears on page 6 of the respondents’ answer, paragraphs 21 through 23 wherein it is alleged that on July 28, 1978 a Mr. Arthur Horowitz of the department interviewed Mr. Fiore, the latter indicating petitioner did not work on the boilers themselves but *307 only did electromechanical work. This statement was allegedly verified by a Mr. John Sypniewiski, stationary engineer. Mr. Fiore is then quoted as stating, after hearing Mr. Horowitz read to him the requirements for the license, that he no longer believed petitioner was qualified for the license. The respondents’ answer is dated July 28, 1980. The court finds it significant that there is no affidavit submitted by Arthur Horowitz as to his interview of Mr. Fiore.
In this proceeding petitioner submits an affidavit of Mr. Fiore, sworn to August 11,1980 in which Mr. Fiore (in the face of the alleged responses by him to Mr. Horowitz) states in paragraph 3: “That I have read the Petition of Joseph Sedutto and in my judgment and opinion Joseph Sedutto has fulfilled all of the requirements for a license for a high-pressure boiler engineer. Mr. Sedutto meets the necessary experience requirements as set forth in the Administrative Code by virtue of the work performed on the boilers under the supervision of Mr. Howard for five years, to wit 1972 through 1978”. (Emphasis supplied.)
The petitioner raises all allowable questions under CPLR 7803 (subds 1, 3), except error of law. The answer sets forth five affirmative defenses: (1) failure to state a cause of action, (2) no Administrative Code requirement for a hearing, (3) petitioner’s failure to meet the minimum experience requirements of either paragraph (1) or (2) of subdivision a of section B26-4.3, (4) the determination was neither arbitrary and capricious nor an abuse of discretion, and (5) the determination was made completely in accord with lawful procedure.
To the extent that this proceeding is in the nature of mandamus to compel the issuance of a license, the relief sought must be denied on the papers submitted. Petitioner has failed to demonstrate a clear legal right to the relief sought. As to reliance on section B26-4.3 (subd a, par [2]) of the Administrative Code, the petition itself alleges in paragraph 5 that the petitioner’s degree is in electrical engineering when paragraph (2) requires a degree in mechanical engineering.
On the other hand, on the remaining issue of the manner in which the determination was made to deny the petitioner *308 a license on the basis of paragraph (1), the court concludes that respondents are not entitled to the prayed for denial of the petition and dismissal of the proceeding.
The allegations of the respondents that the petitioner had a full and fair opportunity to submit proof of his qualifications and that there is no requirement for a hearing under the Administrative Code cannot be contradicted. Nevertheless, the court notes some important unanswered questions raised by the proof. Mr. Fiore when first contacted by the department took a position in support of the petitioner in May, 1978 which was reiterated in his explanatory letter of July 18,1978. It is claimed by the respondents that some 10 days after that response there was a total change of position by Mr. Fiore in his interview with Mr. Horowitz. There is no indication of the relationship of Mr. Sypniewiski to any of this. The Fiore position is further complicated by his affidavit submitted in this proceeding. Moreover, the department evidently made no attempt to contact the other key individual involved, Mr. Howard, under whose supervision it was claimed the petitioner worked and who had indicated his opinion that petitioner qualified for the license. Respondents’ statement in their memorandum of law, “assuming arguendo that a hearing should have been held, the record before this court indicates the unlikelihood of a different result being reached”, is pure speculation. Certainly examination of Mr. Fiore and Mr. Howard as a witness under oath and subject to cross-examination would have shed a great deal of light on this situation, not to mention questioning of Mr. Horowitz.
On the question of a hearing the respondents argue that none was required in connection with petitioner’s application for this license. They recognize that the courts sometimes imply a hearing requirement where the statutory scheme is silent, but that is so only where property rights are adversely affected (Matter of Hecht v Monaghan, 307 NY 461). They further argue that whether a property right is involved or not depends upon whether the license in question is considered a privilege or a right. Respondents cite to the court the leading case of Matter of Fink v Cole (1 NY2d 48) on the necessity of examining the *309 character of the particular license involved to determine the appropriate procedural safeguards, and a number of cases decided subsequently which deal with various types of licenses, and conclude that the license at bar is a privilege rather than a right and therefore no hearing is required.
In what must be characterized as gross understatement, the respondents cite Board of Regents v Roth (408 US 564) as a recent case which merely suggests the erosion of the “right-privilege” doctrine. In that case the Supreme Court of the United States stated (p 571): “the Court has fully and finally rejected the wooden distinction between ‘rights’ and ‘privileges’ that once seemed to govern the applicability of procedural due process rights.” Further in footnote 9 on that-same page the court alludes to its holding in Graham v Richardson (403 US 365, 374) where the court stated: “this Court has now rejected the concept that constitutional rights turn upon whether a governmental benefit is characterized as a ‘right’ or as a ‘privilege.’ ” These cases unequivocally stand for the demise of the doctrine. Respondents rely on Wnek Vending & Amusements v City of Buffalo (96 Misc 2d 983, 991) for the proposition that the “right-privilege” doctrine remains valid in the situation presented at bar. The court in that case, without citation to the aforesaid Supreme Court of the United States cases, makes the statement that the right-privilege distinction has been eroded (no doubt the source for respondents’ use of the same language). To the extent that Wnek Vending continues to recognize the doctrine its reasoning must be rejected in view of Board of Regents and Graham.
The arbitrary or capricious test has been defined as relating to whether a particular administrative action should have been taken or is justified or is without foundation in fact, and such action must have sound basis in reason with regard to the particular facts presented. (Matter of Pell v Board of Educ., 34 NY2d 222, 231.) The court does not and need not find that due process hearings are required in every licensing situation. In view, however, of the sharp factual questions raised in this proceeding, the outside investigation taken by the department without *310 benefit of the right of confrontation to the petitioner, and the inadequacies of such investigation to the extent of failing to interview Mr. Howard, the court concludes that the determination was arbitrary and capricious under the facts presented and a due process hearing is required. (See Matter of Neshaminy, Inc. v Hastings, 64 AD2d 830, 831.)
Accordingly the matter is remanded to the respondents for proceedings consistent herewith.