OPINION OF THE COURT
Harold J. Hughes, J.
Petitioner Agatha Augat is licensed by the respondent to operate the Laurel Manor Home for Adults, a residential facility for adults needing some assistance in performing the routine functions of daily living. The Augat family has operated adult care facilities since 1920. Laurel Manor was opened in 1955. Robert Augat became its administrator in 1982. Pursuant to 18 NYCRR 487.9 (c) (2) a person cannot be an administrator of an adult home "without prior written approval of the department”. The regulation provides that an administrator must be at least 21 years of age, be of good moral character, and have the requisite qualifications to oversee the facility. During July, September and October of 1993, the respondent inspected Laurel Manor and issued a report on December 1, 1993. Violation 24 of the report states that "the administrator reportedly physically abused a resident on or about 08/18/93”. Violation 55 of the report directs that, "Robert Augat is no longer approved to act as administrator and he is not to be present in the facility, nor is he to have contact with residents of the facility”.
On January 25, 1994, the petitioners demanded a hearing upon the abuse charge. On February 24, 1994 the Department responded by stating that there was no right to an administrative hearing. This CPLR article 78 proceeding to compel, among other things, a due process hearing upon the abuse charge followed. The first cause of action asserts a violation of Mr. Augat’s due process rights by depriving him of his license without proper notice of the accusation and a hearing. The second cause of action asserts that Mr. Augat has been deprived of a constitutionally protected liberty interest in his reputation and employment by the respondent’s conduct. The third cause of action asserts damage to a constitutionally protected interest of Mrs. Augat. The fourth cause of action *227 asserts a violation of Mr. Augat’s constitutional rights to freedom of speech, association, and equal protection of the laws because of the direction that he is prohibited from engaging in any conversation or physical interaction with the residents of Laurel Manor. The fifth cause of action asserts that the respondent has overstepped its authority in attempting to restrict the civil rights of Mr. Augat and the adult home residents with regard to conduct taking place off the premises of the adult home.
The answer is verified upon information and belief by an assistant counsel without personal knowledge of the facts and alleges that: Mr. Augat lacks standing to challenge the inspection report; the proceeding is premature; and Mr. Augat does not have a constitutionally protected interest in being approved as an administrator.
The petition is supported by the affidavit of Mr. Augat which states that he was denied the opportunity to respond to the charges at a meeting held with Social Services Regional Director Mary Hart in Manhattan. He states that Ms. Hart refused to allow him to participate in the meeting. After he left the room he alleges that Ms. Hart charged Augat with being a "burnt out administrator” and having been drinking alcohol prior to the meeting. He asserts that he has been unable to respond to the allegation of abuse because the Department has not advised him of the source of the charge, or what specific allegations have been made against him. He alleges that the Department’s action has caused him to lose his employment, and has resulted in physical ailments. Agatha Augat has submitted an affidavit stating that Ms. Hart excluded Robert Augat from the meeting and he was not given any chance to rebut the abuse allegation. The petition is also supported by the affidavits of three residents of Laurel Manor stating that they do not believe that the Department has the right to deprive them of the opportunity to make their own decisions regarding the people that they choose to associate with. The opposition consists of an attorney’s affirmation wherein a lawyer with no personal knowledge of any of the events that occurred states that upon information and belief the petitioners had a full and fair opportunity to respond to the charges.
The first objection in point of law is that Mr. Augat does not have standing to challenge the Commissioner’s actions. Respondent relies upon a decision and order issued in Kings County Supreme Court on June 22, 1993. The court declines to *228 follow that ruling in that the correct rule of law was stated in Salla v County of Monroe (64 AD2d 437, 442, affd 48 NY2d. 514) as follows: "it has long been recognized that an employee has standing to challenge the unconstitutional interference of third persons with the employer-employee relationship”.
Here, Mr. Augat has made a prima facie showing that unconstitutional conduct on the part of the Commissioner has interfered with his employment relationship. He has standing.
Respondent’s major contention is that Mr. Augat does not have a property interest or liberty interest in the Department’s approval of him as an administrator. The first step in the analysis is to determine the nature of the Department’s written approval requirement. The Commissioner and Department of Social Services are subject to the State Administrative Procedure Act (Matter of De Carlo v Perales, 131 AD2d 31; Matter of Ritzel v Blum, 81 AD2d 1029). Subdivision (4) of State Administrative Procedure Act § 102 sets forth the following definition: " 'License’ includes the whole or part of any agency permit, certificate, approval, registration, charter, or similar form of permission required by law”.
Clearly, under the foregoing definition the requirement set forth in 18 NYCRR 487.9 (c) (2) that a person cannot be employed as an adult home administrator "without prior written approval of the department” makes such approval a license. With that established, the respondent’s position reduces to the proposition that when a State agency revokes a citizen’s license to practice his or her occupation, that person does not have any interest protected by the Due Process Clause of the State and Federal Constitutions. In 1944, the Court of Appeals, in Matter of Perpente v Moss (293 NY 325, 329), stated: "Though formal hearings and formal findings may not be required, a license may not be refused on the ground that the applicant 'is not a person of good character’ unless the applicant has fair opportunity to meet a challenge to his good character and unless the court of review is apprised of the basis for the finding against the applicant. The procedure of the Commissioner must conform to recognized standards of fairness and a record must be made which permits a review of the action of the Commissioner by the court”.
More recently, in discussing a physician’s license, the Court of Appeals, in O'Brien v O'Brien (66 NY2d 576, 586), stated: "A professional license is a valuable property right, reflected *229 in the money, effort and lost opportunity for employment expended in its acquisition, and also in the enhanced earning capacity it affords its holder, which may not be revoked without due process of law”.
In Matter of Saumell v New York Racing Assn. (58 NY2d 231) the petitioner, a jockey licensed by the New York Racing and Wagering Board, was excluded from working as a jockey at racetracks owned by the New York Racing Association (NYRA). He brought an article 78 proceeding against NYRA and the Board alleging that the action of NYRA amounted to a summary revocation of his license, and that summary revocation was imposed without a hearing in violation of the State Administrative Procedure Act and his right to due process under the United States Constitution. The Court of Appeals determined that the State Administrative Procedure Act did not apply to NYRA, but recognized that State action was involved because the Legislature had given NYRA a monopoly over horse racing. The Court announced its holding (at 237) as follows: "We conclude that NYRA retains its common-law right of exclusion and is not governed by the State Administrative Procedure Act, but that in view of its State action concession and the substantial rights of which exclusion deprived petitioner it was a violation of petitioner’s constitutional rights to exclude him from NYRA facilities without a prior hearing”.
In Matter of Wrona v Donovan (88 AD2d 998) the Second Department held, "[b]y virtue of the fact that petitioner’s employment requires him to carry a gun (he guards cash payrolls), due process requires a hearing on whether his pistol permit should be revoked”. In Matter of Caputo v Barber (76 AD2d 1029) the Third Department held that a baker holding a food processing license had received due process under the Fourteenth Amendment when he was granted a hearing with regard to the nonrenewal of his license and was allowed to be represented by an attorney and to cross-examine the licensing authority’s witnesses. In Matter of Rossetti v O’Connell (10 Misc 2d 453) the petitioners were licensed by the City of New York to engage in garbage collection. Their license was revoked by the City without any notice or a hearing. Mr. Justice Steuer determined that, "a property right was taken from petitioners and without due process of law” (at 456) and held that the City Licensing Commissioner could not revoke the license without notice and a hearing.
In Matter of Sedutto v City of New York (106 Misc 2d 304) *230 the petitioner was denied a license to be a high pressure boiler engineer. The City argued that the Administrative Code of the City of New York did not require a hearing prior to the denial of a license, and that the petitioner had a full and fair opportunity to submit proof of his qualifications to it. The City contended that whether a person was entitled to a due process hearing when a license was denied turned on whether the license in question was considered a privilege or a right. In rejecting that argument, Mr. Justice Blyn held (at 309-310):
"In what must be characterized as gross understatement, the respondents cite Board of Regents v Roth (408 US 564) as a recent case which merely suggests the erosion of the 'right-privilege’ doctrine. In that case the Supreme Court of the United States stated (p 571): 'the Court has fully and finally rejected the wooden distinction between "rights” and "privileges” that once seemed to govern the applicability of procedural due process rights.’ Further in footnote 9 on that same page the court alludes to its holding in Graham v Richardson (403 US 365, 374) where the court stated: 'this Court has now rejected the concept that constitutional rights turn upon whether a governmental benefit is characterized as a "right” or as a "privilege.” ’ These cases unequivocally stand for the demise of the doctrine * * *
"The arbitrary or capricious test has been defined as relating to whether a particular administrative action should have been taken or is justified or is without foundation in fact, and such action must have sound basis in reason with regard to the particular facts presented. (Matter of Pell v Board of Educ., 34 NY2d 222, 231.) The court does not and need not find that due process hearings are required in every licensing situation. In view, however, of the sharp factual questions raised in this proceeding, the outside investigation taken by the department without benefit of the right of confrontation to the petitioner, and the inadequacies of such investigation to the extent of failing to interview Mr. Howard, the court concludes that the determination was arbitrary and capricious under the facts presented and a due process hearing is required”.
It appears that under New York law a doctor, a jockey, a baker, a payroll guard, a tow truck driver (Matter of Brown v Murphy, 34 Misc 2d 151), a garbage man, and a boiler engineer have a constitutionally protected interest in their licenses entitling them to notice and a hearing before such licenses are revoked or denied. According to the respondent, an adult *231 home administrator does not. This court can discern no rational basis that would support the foregoing classification of the different rights to be afforded to citizens attempting to earn a living. Be that as it may, while in the first instance Mr. Augat may not have been entitled to a full scale adversarial hearing, under the circumstances of this case he now is. On this record the respondent ordered the revocation of a license and deprived a citizen of his rights to associate and speak to long-term friends based upon a report from an unnamed source alleging physical abuse. According to the only accounts in the record given by persons with actual knowledge, Mr. Augat was excluded from the meeting at which he could have heard the charge and defended himself, and instead was defamed by a bureaucrat as a burned-out administrator and alcohol abuser. This is a type of oppressive governmental conduct the Due Process Clause of the Constitution was designed to prevent.
The petitioners will be granted a judgment: annulling section 55 of the report of inspection dated December 1, 1993, which rescinded the approval of Robert Augat to be an administrator of the Laurel Manor Home for Adults; annulling that portion of the report which directed that Robert Augat is not to be present in the facility or have contact with residents of the facility; and remanding the proceeding to the respondent with the direction to hold a hearing upon the charge that Robert Augat physically abused a resident on August 18, 1993.