■ In the Matter of AGATHA AUGAT, Doing Business as LAUREL MANOR HOME FOR ADULTS, et al., Respondents, v MARY HART, as Director of the Metropolitan Region of the Division of Housing and Adult Services of the New York State Department of Social Services, et al., Appellants. [665 NYS2d 970] —Casey, J. Appeal from a judgment of the Supreme Court (Hughes, J.), entered June 3, 1996 in Albany County, which partially granted petitioners' application, in a proceeding pursuant to CPLR article 78, to, *inter alia*, hold respondent Mary Hart in civil contempt of court.

Petitioner Agatha Augat was the owner and operator of Laurel Manor Home for Adults in the Town of Clarkstown, Rockland County. On December 1, 1993, following three routine inspections, the Department of Social Services (hereinafter the Department) issued an inspection report citing Laurel Manor for 55 separate violations of statutory and regulatory provisions relating to patient care, cleanliness and sanitation and setting forth certain corrective action. Two of the charges stemmed from an allegation that petitioner Robert Augat (hereinafter Augat), the administrator of Laurel Manor, had physically abused one of the residents. As a result, Augat's approval to act as administrator was rescinded as of December 1, 1993 and his presence in the facility was prohibited.

Although Augat was thereafter suspended as the facility's administrator, petitioners demanded an administrative hearing on the abuse charge. When the Department refused, petitioners commenced a CPLR article 78 proceeding claiming that the Department had violated their constitutional rights by, *inter alia*, depriving Augat of his license without proper notice of the accusation and a hearing. By judgment entered June 14, 1994, Supreme Court granted petitioners' application and annulled those sections of the inspection report which rescinded Augat's approval to serve as administrator and barred him from the facility (*Matter of Augat v Dowling*, 161 Misc 2d 225). The Department filed a notice of appeal, thereby staying enforcement of Supreme Court's judgment (*see*, CPLR 5519).

The receipt of continued accusations of abuse by Augat, as well as ongoing inspections of Laurel Manor revealing that many of the operational deficiencies cited in the December 1993 report remained unchanged, resulted in the issuance of another inspection report on March 10, 1995. This report went out under the signature of respondent Mary Hart, the Director of the Metropolitan Regional Office of the Department's Office of Housing and Adult Services. In raising the allegations of abuse by Augat, the March 1995 report alluded to the earlier recommendation that he be removed from both his job as administrator and from his apartment at the facility.

Soon after the report was issued, petitioners wrote to Hart demanding a retraction of the two violations relating to the allegations of abuse and Augat's continued presence at the facility. Hart forwarded this letter to the Department's counsel, who notified petitioners that no modifications would be made to the report. Petitioners thereafter commenced this proceeding seeking to, *inter alia*, have Hart held in civil contempt of court on the ground that the references in the March 1995

inspection report to the Department's earlier determinations to rescind Augat's approval to serve as administrator and to bar him from the premises violated the June 1994 judgment.

Supreme Court initially held that, as a result of the automatic stay, Hart could not be found in contempt for having issued the report in the first instance. The court ordered a hearing, however, to determine the factual issue of whether Hart had the authority to withdraw the charges against Augat once the stay was lifted on March 27, 1995. After the hearing, Supreme Court found Hart in civil contempt, fined her $250 and ordered her to pay petitioners' court costs and counsel fees.

To establish civil contempt as alleged herein petitioners must prove, to a reasonable degree of certainty, that Hart violated a lawful and unequivocal court order of which she had knowledge and, in doing so, she "defeated, impaired, impeded, or prejudiced" petitioners' rights (Judiciary Law § 753 [A]; *see, Matter of Department of Envtl. Protection v Department of Envtl. Conservation*, 70 NY2d 233, 240; *Matter of McCormick v Axelrod*, 59 NY2d 574, 583, *amended on other grounds* 60 NY2d 652). Furthermore, Hart could not be held in contempt here unless she had the authority to modify the inspection report (*see, Pereira v Pereira*, 35 NY2d 301, 309; 21 NY Jur 2d, Contempt, § 125, at 513).

Respondents' witnesses specifically testified that only the Department's Commissioner or its counsel had the discretion to modify the March 1995 inspection report. Although Supreme Court had the discretion to discount this unrefuted testimony by Department personnel, which it in fact did, petitioners needed to put forth some affirmative proof that Hart was personally responsible for any failure to amend the report before the court could hold Hart in civil contempt (*see, Panza v Nelson*, 54 AD2d 928). Petitioners failed to meet their burden in this regard. Instead they merely relied on Hart's own testimony regarding her job responsibilities, which we find insufficient to support a finding of contempt.

We further find that petitioners failed to allege any specific instances of how their rights were prejudiced. Such failure to establish any injury or damages which could be compensated, coupled with respondents' subsequent compliance with Supreme Court's judgment, also warrants denial of petitioners' application to hold Hart in civil contempt (*see, Matter of Department of Envtl. Protection v Department of Envtl. Conservation*, 70 NY2d 233, 239, *supra*).

Mikoll, J. P., Crew III, Yesawich Jr. and Spain, JJ., concur.

Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as found respondent Mary Hart in civil contempt, and, as so modified, affirmed.